Docket Nos. 97235, 97258 cons.–Agenda 3–November 2004.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant and Cross-Appellee and Appellee, v. TYREESE ROBERTS, Appellee and Cross-Appellant and Appellant.

Opinion filed February 3, 2005.

JUSTICE KILBRIDE delivered the opinion of the court:

Defendant, Tyreese Roberts, was found guilty by a jury of two counts of first degree murder (720 ILCS 5/9–1(a)(1) (West 1996)) and two counts of aggravated battery with a firearm (720 ILCS 5/12–4.2(a)(1) (West 1996)). The circuit court of Cook County sentenced him to natural life imprisonment for each count of first degree murder and 20 years’ imprisonment for each count of aggravated battery with a firearm.

The appellate court reversed defendant’s convictions and remanded the cause for a new trial, holding the trial court erred in replacing a discharged juror with an alternate after deliberations had begun. The appellate court did not address defendant’s claim that the trial court erred in denying his motion to quash arrest and suppress evidence. No. 1–01–2612 (unpublished order under Supreme Court Rule 23).

We granted petitions for leave to appeal filed by both the State and defendant (177 Ill. 2d R. 315(a)), and the appeals were consolidated. In these appeals, we consider whether replacement of a discharged juror with an alternate after a case is submitted to the jury for deliberations is permissible under Illinois law. We hold postsubmission replacement of a juror is permissible under limited circumstances, and the decision whether to proceed in that manner is within the discretion of the trial court. Based on the facts of this case, we find the trial court abused its discretion in replacing a discharged juror with an alternate after deliberations began.

I. BACKGROUND

Defendant was charged with multiple offenses stemming from a drive-by shooting. The charges included the first degree murders of Salada Smith and Joshua Thomas and aggravated battery with a firearm of Robert Carr and Derrick Wandrick.

Prior to trial, defendant filed a motion to quash his arrest and suppress evidence. Defendant claimed that police officers lacked probable cause to arrest him and that a statement he made after the arrest should be suppressed as the fruit of the poisonous tree. See 
Wong Sun v. United States
, 371 U.S. 471, 486, 9 L. Ed. 2d 441, 454, 83 S. Ct. 407, 416 (1963). Following a hearing, the trial court found the officers had probable cause to arrest defendant for the charged offenses and denied his motion.

Defendant’s first jury trial resulted in guilty verdicts on two counts of first degree murder (720 ILCS 5/9–1(a)(1) (West 1996)) and two counts of aggravated battery with a firearm (720 ILCS 5/12–4.2(a)(1) (West 1996)), but the trial court later granted defendant’s motion for a new trial because he did not receive a ballistics report used by the State at trial. Defendant’s second trial ended in a mistrial because the jury was deadlocked.

This appeal is from defendant’s convictions following his third jury trial. The jury for defendant’s third trial was selected on Monday, March 19, 2001. Twelve jurors and two alternates were selected, and the jury began hearing evidence the next day. Prior to the presentation of evidence, the trial court instructed the jurors that they were prohibited from speaking to the parties or any of the witnesses, and they were required to report immediately any attempt to discuss the case with them to one of the deputies. The court also instructed the jurors to inform one of the deputies if they experienced any personal problems or were in doubt as to their rights or duties as jurors.

On the charges at issue, the evidence, in pertinent part, showed that a van approached Salada Smith, Joshua Thomas, Robert Carr and Derrick Wandrick as they were standing in a gas station parking lot at approximately 2 a.m. on June 22, 1997. Several gunshots were fired from the open sliding door of the van. Salada Smith and Joshua Thomas died as a result of the multiple gunshot wounds they suffered in this incident. Robert Carr and Derrick Wandrick survived their gunshot wounds.

Three witnesses at the scene were unable to identify the occupants of the van. Police officers were later informed that a person named Paris Williams may have been involved in these shootings. When the officers located Williams, he informed them defendant was one of the people involved in the shootings. The officers proceeded to defendant’s residence and arrested him. After he was arrested, defendant gave a statement admitting he was the driver of the van.

According to the testimony of Paris Williams, the occupants of the van were part of a street gang. Defendant and Michael Phillips were two of the gang members present when the shooting was planned. The intended targets of the shooting were members of a rival gang.

On Wednesday, March 21, defendant called Michael Phillips to testify. Phillips testified he and defendant were friends and grew up together. Phillips admitted he was a gang member, but testified defendant did not belong to a gang. Phillips denied having any personal knowledge of this incident.

The jury began deliberations at approximately 4 p.m. on Thursday, March 22. The one remaining alternate juror was excused after being admonished by the court not to discuss the evidence or any aspect of the case with anyone. Sometime between 5:45 and 6 p.m. that day, the jury sent a note to the court stating:

“Dear Judge:

***, one of our jurors, was contacted by Michael Phillips on Tuesday outside of the courtroom prior to his appearance in court.

She brought this to our attention and we are bringing it to you for a decision on what course of action if any may be necessary.

*Michael Phillips influenced her thinking in coming to a decision in this case (possibly out of fear)[.]”

The court brought the jurors into the courtroom and instructed them to stop their deliberations. The court then questioned the juror (hereafter, the excused juror) who had been contacted by Phillips outside the presence of the other jurors. The excused juror stated she spoke with Michael Phillips outside the courthouse two days earlier, on Tuesday night. She spoke with Phillips for approximately 25 minutes while she was waiting for a ride and Phillips was trying to hail a cab. She had never met Phillips prior to this conversation. They did not talk about the trial, and she did not know why Phillips was there. She did not know Phillips was a witness in the case until he testified on Wednesday. She was “shocked” when Phillips was called to testify. The excused juror stated Phillips did not threaten her during their conversation. She nonetheless felt she could not be fair and impartial because she had a conversation with Phillips and he later testified in this case.

In response to questioning by defense counsel, the excused juror stated Phillips kept looking at her when he testified and she became nervous. After Phillips testified, the other women on the jury asked her why she was “looking like that.” At that point, the excused juror mentioned her conversation with Phillips to all of the other women on the jury.

The excused juror stated the jury began deliberating the next day. The jury voted twice after they went into the jury room, and she voted “not guilty” both times. According to the excused juror, the other jurors knew she was nervous. The other jurors told her that she should inform the court about her conversation with Phillips, but they did not tell her that she should be removed from the jury.

The trial court then questioned the other 11 jurors individually. The juror who wrote the note stated the excused juror did not tell him that Phillips influenced her out of fear. Rather, one of the other jurors said that the excused juror was afraid for her life or “something to that effect.” Based on this information, he wrote that Phillips influenced the excused juror “possibly out of fear.”

Ten of the other jurors stated they were aware of the conversation between the excused juror and Phillips, and they did not believe Phillips had threatened her. Several of these jurors believed the excused juror felt some fear or anxiety as a result of her conversation with Phillips because he stared at her during his testimony and because she and Phillips both lived on the west side of Chicago. Two of the female jurors stated the excused juror told them she also encountered Phillips on Wednesday night in the stairway after his testimony. The excused juror and Phillips did not speak to each other on that occasion. Each of these 10 jurors stated the conversation between the excused juror and Phillips would not influence his or her ability to be fair and impartial in this case.

The remaining eleventh juror stated she was not aware of the contents of the note, but she was aware that the excused juror had spoken to someone and was afraid. She stated her knowledge of this information would not influence her ability to be fair and impartial.

After speaking with the other 11 jurors, the court again questioned the excused juror. The excused juror stated she was afraid that she could possibly encounter Phillips in the future because they both lived on the west side of Chicago. She indicated she could not be impartial given these circumstances. At that point, the trial court dismissed the excused juror from the jury for cause.

Defense counsel moved for a mistrial, asserting the remaining jurors could not be impartial given their knowledge of the interaction between the excused juror and Phillips. In ruling on the motion, the trial court noted there was no evidence that Phillips threatened the excused juror, the jurors indicated they did not believe Phillips did anything wrong, and each of the jurors stated this event would not influence his or her ability to be fair and impartial. Based on those findings, the trial court denied defendant’s motion for a mistrial.

The trial court then called the 11 remaining jurors into the courtroom. The court informed them the excused juror had been dismissed by agreement of the parties and the alternate juror would be recalled the following day. The court instructed the jurors that they should not discuss the dismissal when they resumed deliberations.

The following morning, the court questioned the alternate juror, who stated she had not discussed the facts of this case with anyone, and she had not formed an opinion about the case. The court then called the other 11 jurors into the courtroom, and the jury was resworn. The trial court instructed the jury to “begin your deliberations from the start, to begin them anew.” The record does not indicate the time the reconstituted jury began deliberating, but it does show the jury found defendant guilty of the offenses at 9:30 that morning.

On direct appeal, defendant argued: (1) his confession should have been suppressed because it was the fruit of an illegal arrest; (2) the replacement of the excused juror after submission violated section 115–4(g) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115–4(g) (West 2000)) and Supreme Court Rule 434(e) (134 Ill. 2d R. 434(e)); and (3) the jury as a whole was biased as a result of the conversation between the excused juror and Phillips. The appellate court held the replacement of the excused juror after submission was contrary to section 115–4(g) and Supreme Court Rule 434(e). The court then analyzed two prior Illinois appellate court cases, 
People v. Hayes
, 319 Ill. App. 3d 810 (2001), and 
People v. Henderson
, 45 Ill. App. 3d 798 (1977), that found such an “irregularity” did not require reversal in the absence of prejudice to the defendant. The appellate court found the facts of this case indicated defendant was prejudiced as a result of the juror-replacement procedure. Relying on 
United States v. Symington
, 195 F.3d 1080 (9th Cir. 1999), the appellate court further held replacing the excused juror with an alternate juror violated defendant’s constitutional right to jury unanimity. The appellate court therefore reversed defendant’s convictions and remanded the cause to the trial court for a new trial. The appellate court did not address defendant’s other contentions, finding they were not necessary to the disposition of the appeal.

We allowed petitions for leave to appeal filed by both the State and defendant (177 Ill. 2d R. 315(a)), and consolidated the appeals. In appeal No. 97235, the State contends the appellate court erred in reversing defendant’s convictions because the substitution of the alternate juror during deliberations did not violate section 115–4(g) or Supreme Court Rule 434(e), and his constitutional right to jury unanimity was not violated by the substitution. Defendant cross-appealed in appeal No. 97235, claiming the juror substitution resulted in a denial of his right to a fair trial by an unbiased jury. In appeal No. 97258, defendant contends the appellate court erred in failing to address his claim that his motion to quash arrest and suppress evidence should have been granted.

II. ANALYSIS

We are asked to interpret section 115–4(g) of the Code (725 ILCS 5/115–4(g) (West 2000)) and Supreme Court Rule 434(e) (134 Ill. 2d R. 434(e)). Each provides for replacement of a discharged juror with an alternate before final submission of a cause to the jury. We must decide whether those provisions allow replacement after submission. The State contends the juror-replacement procedure employed by the trial court is not contrary to section 115–4(g) or Rule 434(e), and that the court acted within its discretion in replacing the excused juror with the alternate juror because the replacement ensured defendant received a fair trial by an impartial jury. In response, defendant argues the use of alternate jurors after a case is submitted to the jury is prohibited by section 115–4(g) and Rule 434(e).

We review 
de novo 
the construction of a statute as a question of law. 
People v. Bonutti
, 212 Ill. 2d 182, 188-89 (2004). In construing a statute, our primary goal is to determine and give effect to the intent of the legislature. 
Metzger v. DaRosa
, 209 Ill. 2d 30, 34 (2004). If we can determine the legislative intent from the plain language of the statute, we will give that intent effect without resorting to other interpretive aids. 
Metzger
, 209 Ill. 2d at 35. We will not depart from the plain statutory language by reading into it exceptions, limitations, or conditions that are in conflict with the express legislative intent. 
Barnett v. Zion Park District
, 171 Ill. 2d 378, 388-89 (1996). Further, a court may not inject provisions that are not found in a statute. 
Bridgestone/Firestone, Inc. v. Aldridge
, 179 Ill. 2d 141, 154-55 (1997). The rules of statutory construction also apply to interpretation of our supreme court rules. 
In re Estate of Rennick
, 181 Ill. 2d 395, 404 (1998).

Section 115–4(g) and Supreme Court Rule 434(e) allow trial courts to direct the selection of alternate jurors after impaneling a jury. 725 ILCS 5/115–4(g) (West 2000); 134 Ill. 2d R. 434(e). The key language in both of these provisions, for purposes of this appeal, is as follows: “If before the final submission of a cause a member of the jury dies or is discharged he shall be replaced by an alternate juror in the order of selection.” 725 ILCS 5/115–4(g) (West 2000); 134 Ill. 2d R. 434(e).

The plain language of section 115–4(g) and Rule 434(e) provides for mandatory replacement of a juror who dies or is discharged before submission of a case to the jury. The replacement of a discharged juror after submission is not addressed in any way by these provisions. Certainly, there is no express language in section 115–4(g) or Rule 434(e) barring replacement of a juror after submission.

Defendant advances, however, several arguments in support of his contention that section 115–4(g) and Rule 434(e) prohibit replacement of a juror after submission. First, defendant argues that because the statute and rule provide for replacement of a juror with an alternate only before submission, the absence of a similar provision for postsubmission juror replacement indicates an intent to bar that process. Thus, according to defendant, the rule of 
expressio unius est exclusio alterius 
is violated by construing the statute and the rule to allow for replacement of jurors after submission.

The maxim 
expressio unius est exclusio alterius 
means “ ‘the expression of one thing is the exclusion of another.’ ” 
Metzger
, 209 Ill. 2d at 44, quoting Black’s Law Dictionary 581 (6th ed. 1990). This maxim is simply an aid of statutory construction, not a rule of law, and is subordinate to the primary rule that the legislative intent controls in interpreting a statute.
 In re Detention of Lieberman
, 201 Ill. 2d 300, 319 (2002); 
Bridgestone/Firestone
, 179 Ill. 2d at 153. This maxim is applicable only to help ascertain the intent of the legislature when that intent is not clear from the plain language of the statute. 
Bridgestone/Firestone
, 179 Ill. 2d at 153.

The plain language of section 115–4(g) and Rule 434(e) mandates replacement of discharged jurors prior to submission. This language does not, however, indicate an intent to preclude the use of alternate jurors after submission. There is no indication from the plain language of these provisions that the legislature intended to govern the entire subject of the use of alternate jurors. Thus, the principle of 
expressio unius est exclusio alterius
 does not support defendant’s contention because the plain language of these provisions does not indicate an intent to prohibit use of alternate jurors after submission. Defendant also argues section 115–4(g) and Rule 434(e), as criminal provisions, must be strictly construed in his favor, and nothing may be implied from these provisions beyond their literal meaning. Like the principle of 
expressio unius est exclusio alterius
, the rule that penal statutes should be construed to afford lenity to the accused is only applicable where the statute is ambiguous. 
People v. Hicks
, 164 Ill. 2d 218, 222 (1995); 
People v. Hobbs
, 86 Ill. 2d 242, 246 (1981). Since the plain language of section 115–4(g) and Rule 434(e) is not ambiguous, this aid of construction is not applicable. Moreover, this rule does not assist defendant because a literal reading of the provisions at issue results in an interpretation that they only apply to replacement of discharged jurors before submission and do not prohibit postsubmission replacements.

Finally, defendant asserts 14 other jurisdictions have reviewed statutes or rules similar to section 115–4(g) and Rule 434(e) and found their provisions prohibit substitution of alternate jurors after submission. A review of the cases cited by defendant for this proposition reveals that 11 of those cases involved statutes or rules specifically requiring the discharge of alternate jurors after submission. See 
Cantrell
 
v. State
, 265 Ark. 263, 266, 577 S.W.2d 605, 607 (1979); 
People v. Burnette
, 775 P.2d 583, 586-87 (Colo. 1989); 
Claudio v. State
, 585 A.2d 1278, 1284-85 (Del. 1991); 
Bulls v. United States
, 490 A.2d 197, 200 (D.C. 1985); 
State v. Wideman
, 69 Haw. 268, 269, 739 P.2d 931, 932 (1987); 
James v. State
, 14 Md. App. 689, 698-99, 288 A.2d 644, 650 (1972); 
People v. Dry Land Marina
, 175 Mich. App. 322, 328, 437 N.W.2d 391, 393-94 (1989); 
State v. Hutton
, 53 Ohio St. 36, 46, 559 N.E.2d 432, 444 (1990); 
Brigman v. State
, 350 P.2d 321, 322-23 (Okla. Crim. App. 1960); 
State v. Bobo
, 814 S.W.2d 353, 355 (Tenn. 1991); 
State v. Cuzick
, 11 Wash. App. 539, 541, 524 P.2d 457, 458-59 (1974). Unlike the provisions interpreted in these cases, section 115–4(g) and Rule 434(e) do not specifically require discharge of alternate jurors after submission. We find this difference in language is critical. A provision expressly requiring discharge of alternate jurors after submission clearly indicates a legislature’s intent to preclude the use of alternate jurors after submission. In contrast, the plain language of our statute and supreme court rule does not indicate an intent to prohibit the use of alternate jurors after deliberations. Accordingly, these authorities are of limited persuasive value in construing our statute and rule.

Defendant also cites 
Sotola v. State
, 436 So. 2d 1001 (Fla. App. 1983), and 
Woods v. Commonwealth
, 287 Ky. 312, 152 S.W.2d 997 (1941), in support of his contention that other jurisdictions have reviewed statutes or rules similar to ours to prohibit postsubmission substitution. In
 Sotola
, the court did not interpret any provision on this subject. The court stated Florida did not have any statutory or procedural authorization for postsubmission substitution and concluded “[i]n the event of timely objection, it should not be done.” 
Sotola
, 436 So. 2d at 1009. In 
Woods
, the court interpreted language that is not similar to our statute or rule to prohibit postsubmission substitution. 
Woods
, 287 Ky. at 315-16, 152 S.W.2d at 999.

In the remaining case cited by defendant, the Wisconsin Supreme Court interpreted language similar, but not identical, to that contained in our statute and supreme court rule. See 
State v. Lehman
, 108 Wis. 2d 291, 321 N.W.2d 212 (1982). The statute interpreted in 
Lehman
 provided in relevant part: “If before the final submission of the cause a regular juror dies or is discharged, the court shall order an alternate juror to take his place in the jury box.” (Emphasis omitted.) 
Lehman
, 108 Wis. 2d at 302, 321 N.W.2d 2d at 217. The statute did not contain language requiring discharge of alternate jurors at the time the case was submitted to the jury. The court stated it appeared the legislature intended the statute to control the entire subject of use of alternate jurors. 
Lehman
, 108 Wis. 2d at 305, 321 N.W.2d at 219. Therefore, 
Lehman
 found the Wisconsin statute did not allow substitution of a juror during deliberations. 
Lehman
, 108 Wis. 2d at 305-06, 321 N.W.2d at 219-20. The court further held that substitution of an alternate juror during deliberations was reversible error absent consent by the defendant to the substitution. 
Lehman
, 108 Wis. 2d at 313, 321 N.W.2d at 222-23. In a subsequent case, the Wisconsin Supreme Court explained the opinion in 
Lehman
 was based primarily on the public policy concern that a fair trial required participation of all jurors in all jury deliberations and postsubmission juror substitution violated that policy. 
State v. Koput
, 142 Wis. 2d 370, 386-87, 418 N.W.2d 804, 811 (1988).

In this case, we base our decision on the plain language of our statute and rule. See 
Metzger
, 209 Ill. 2d at 35 (we will rely solely on the plain language of a statute if the legislative intent can be determined from that language). As previously stated, we find the plain language of our statute and rule does not indicate an intent to prohibit the use of alternate jurors after submission. It is not evident from these provisions that alternate jurors may only be used before submission. Accordingly, we reject the policy rationale in 
Lehman 
and adhere to the plain language of our statute and rule.

We also note that when postsubmission substitution is found to be erroneous, most jurisdictions have not required reversal unless the defendant was prejudiced by the error. See 
State v. Sanchez
, 129 N.M. 284, 291, 6 P.3d 486, 493 (2000) (collecting cases). Accordingly, most courts have found a 
per se
 rule of reversal is not necessary to protect the defendant’s right to a fair trial.

In sum, when the language of a statute or rule is unambiguous, the only legitimate function of courts is to enforce the law as written. 
Bridgestone/Firestone
, 179 Ill. 2d at 154. We conclude the plain language of section 115–4(g) and Rule 434(e) applies only to the mandatory replacement of a juror before deliberations and does not prohibit postsubmission replacement of a juror.

In the absence of a specific prohibition of postsubmission juror replacement, we find this question should be viewed as a matter within the trial court’s discretion. Matters relating to jury selection and management are generally within the discretion of the trial court. See 
People v. Metcalfe
, 202 Ill. 2d 544, 553 (2002) (deciding a challenge of a prospective juror for cause); 
People v. Kirchner
, 194 Ill. 2d 502, 541 (2000) (determining jury instructions); 
People v. Chapman
, 194 Ill. 2d 186, 222 (2000) (giving a 
Prim
 instruction to a deadlocked jury and the timing of the instruction); 
People v. Kliner
, 185 Ill. 2d 81, 163 (1998) (deciding jury’s request for transcripts of witness testimony); 
People v. Cloutier
, 178 Ill. 2d 141, 173 (1997) (allowing evidentiary items in the jury room); 
People v. Williams
, 164 Ill. 2d 1, 16 (1994) (determining the manner and scope of 
voir dire
 examination); 
People v. Ward
, 154 Ill. 2d 272, 305 (1992) (replacing a juror with an alternate before submission); 
People v. Preston
, 76 Ill. 2d 274, 283 (1979) (declaring a mistrial due to the length of deliberations).

In determining whether the trial court abused its discretion, the primary consideration must be the potential prejudice to the defendant as a result of the postsubmission replacement. We find our appellate court’s decisions in 
Hayes
 and 
Henderson
 instructive in analyzing the potential prejudice to a defendant in these circumstances. In 
Hayes
, a juror was replaced by an alternate during deliberations when it was discovered the juror could not adequately follow the evidence because he had significant difficulty understanding the English language. 
Hayes
, 319 Ill. App. 3d at 814. The appellate court did not address whether replacement of the juror during deliberations was prohibited by section 115–4(g) or Supreme Court Rule 434(e). Instead, the court focused on whether the defendant was prejudiced by the juror-replacement procedure. The court concluded the replacement of the juror during deliberations, while “irregular,” did not require reversal because the defendant was not prejudiced by this procedure. 
Hayes
, 319 Ill. App. 3d at 817-18. In finding the defendant was not prejudiced, the appellate court noted the alternate juror was discharged for only 2½ hours before being recalled, he had not discussed the case with anyone after being discharged, he had not formed an opinion about the case, and the jury was admonished to begin deliberations anew after the alternate was recalled. 
Hayes
, 319 Ill. App. 3d at 818.

Similarly, in 
Henderson
, the appellate court held, absent a showing of prejudice, the replacement of a juror after deliberations was at most an “irregularity.”
 Henderson
, 45 Ill. App. 3d at 805. The court found the defendant was not prejudiced by the substitution because the alternate did not talk about the case with anyone except his wife after he was released, he and his wife did not express opinions about the case to each other, and he had not formed an opinion about the case. 
Henderson
, 45 Ill. App. 3d at 805-06. The court also noted the jury deliberated for 2½ hours before the regular juror suffered a heart attack, and the reconstituted jury reached a verdict after deliberating for five hours. 
Henderson
, 45 Ill. App. 3d at 806. The court, noting that the defendant acquiesced in the juror replacement, concluded the alleged error did not constitute plain error because the defendant was not prejudiced by the procedure. 
Henderson
, 45 Ill. App. 3d at 805.

Federal case law is also instructive in determining whether a defendant has suffered prejudice in these circumstances. Prior to 1999, Federal Rule of Criminal Procedure 24(c) provided that alternate jurors who did not replace a regular juror were to be discharged when the jury commenced deliberations. Fed. R. Crim. P. 24(c) (1999). Like the other jurisdictions cited above, federal courts adopted the view that postsubmission replacement violated the plain language of this rule. 
Quiroz-Cortez
, 960 F.2d at 420; 
United States v. Josefik
, 753 F.2d 585, 587 (7th Cir. 1985). The federal courts employed a harmless error analysis to postsubmission juror replacement, focusing on the risk of prejudice to the defendant from the substitution. 
Quiroz-Cortez
, 960 F.2d at 420; 
United States v. Guevara
, 823 F.2d 446, 448 (11th Cir. 1987); 
Josefik
, 753 F.2d at 587. In discussing the risk of prejudice, federal courts expressed concern that the other jurors may have already formed positions or opinions in the absence of the alternate juror and then exerted pressure on the alternate to ratify the predetermined verdict. 
Quiroz-Cortez
, 960 F.2d at 420 (citing 
United States v. Phillips
, 664 F.2d 971, 995-96 (5th Cir. 1981), and 2 C. Wright, Federal Practice & Procedure §388, at 392-93 (1982)). The federal courts considered several factors in evaluating prejudice, including the length of the deliberations before and after the substitution, whether the trial court instructed the reconstituted jury to begin its deliberations anew, and whether the court ensured the alternate juror had not discussed the case with anyone and had not been exposed to outside influences about the case after discharge. 
Quiroz-Cortez
, 960 F.2d at 420-21; 
Josefik
, 753 F.2d at 587. The federal rule was subsequently amended to allow trial courts discretion to retain alternate jurors after submission and to replace a regular juror with an alternate during deliberations. Fed. R. Crim. P. 24(c)(3) (2002).

We acknowledge that substitution of an alternate juror during deliberations involves substantial potential for prejudice, thus requiring trial courts to review carefully the matter and take significant precautions to avoid prejudice before allowing substitution. In determining whether a defendant was prejudiced, we will consider the totality of the circumstances, including: (1) whether the alternate juror and the remaining original jurors were exposed to outside prejudicial influences about the case; (2) whether the original jurors had formed opinions about the case in the absence of the alternate juror; (3) whether the reconstituted jury was instructed to begin deliberations anew; (4) whether there is any indication that the jury failed to follow the court’s instructions; and (5) the length of deliberations both before and after the substitution. See 
Hayes
, 319 Ill. App. 3d at 818; 
Henderson
, 45 Ill. App. 3d at 805-06; 
Quiroz-Cortez
, 960 F.2d at 420-21; 
Josefik
, 753 F.2d at 587. We also acknowledge the importance of guarding the privacy and secrecy of a jury’s deliberations. See 
United States v. Olano
, 507 U.S. 725, 737, 123 L. Ed. 2d 508, 522, 113 S. Ct. 1770, 1779 (1993). Thus, trial courts must be careful to avoid inquiring as to jurors’ specific views on the case.

Given the facts of this case, we find defendant was prejudiced by the replacement of the excused juror with the alternate juror. First, according to the excused juror, all of the other female jurors were informed the day before deliberations began of her contact with Phillips. Based on that statement, we must conclude the female alternate juror knew of the contact between the excused juror and Phillips because the alternate juror was not excused from the jury until the case was submitted for deliberations. The alternate juror was not, however, questioned about her knowledge of the contact between the excused juror and Phillips when she was recalled to serve on the jury. Therefore, the court did not ensure the alternate juror was not biased due to outside influence.

Additionally, several of the jurors believed the excused juror was nervous or in fear as a result of her contact with Phillips. Despite this concern, the jurors did not inform the trial court of this situation until 6 p.m. the following day, after the jury had deliberated for approximately two hours. Given the excused juror’s admitted nervousness concerning her contact with Phillips, we believe the jurors should have recognized this as a problem requiring the immediate attention of the court. This is particularly true because the jurors were instructed that they were prohibited from speaking to witnesses and they should inform one of the deputies if they had personal problems or were in doubt as to their duties as jurors. This court has previously held the failure of jurors to bring an outside influence to the trial court’s attention may be indicative of a lack of appreciation for their responsibility as jurors. 
People v. Jones
, 105 Ill. 2d 342, 352 (1985). We conclude the failure of the jurors to notify promptly the court of this contact may be viewed as a lack of appreciation for their duties.

Further, the two votes by the original jurors indicate defendant was prejudiced by the juror replacement. The record shows the 11 original jurors voted twice before the case was submitted to the reconstituted jury. Thus, these 11 jurors formed and declared their opinions about this case before the reconstituted jury deliberated. The environment of the reconstituted jury would be inherently coercive for the alternate juror because the other jurors had already determined their views on the case. See 
United States v. Lamb
, 529 F.2d 1153, 1156 (9th Cir. 1975) (there is an inherent coercive effect on an alternate juror who joins a jury that has already decided the accused is guilty).

We note that the record does not indicate the time the reconstituted jury began deliberating. Therefore, the record is insufficient to allow consideration of the length of deliberations before and after the substitution as a factor in the prejudice inquiry.

In sum, this case vividly illustrates the concern the federal courts have articulated regarding replacement of a juror with an alternate during deliberations. The two votes by the original jury show the 11 original jurors clearly formed positions in the absence of the alternate juror. Based on these circumstances, we agree with the appellate court that defendant was prejudiced by the replacement of the excused juror with the alternate juror after submission. The trial court therefore abused its discretion in proceeding in this manner and defendant is entitled to a new trial.

A review of the record shows the evidence was sufficient to prove defendant guilty of the offenses beyond a reasonable doubt. We therefore conclude there is no double jeopardy impediment to a new trial. See 
People v. Fornear
, 176 Ill. 2d 523, 535 (1997); 
People v. Porter
, 168 Ill. 2d 201, 215 (1995). We have made no conclusion as to defendant’s guilt that would be binding on retrial. See 
Fornear
, 176 Ill. 2d at 535.

Finally, we need not consider the other claims raised by the parties concerning jury unanimity and jury bias because we have concluded defendant is entitled to a new trial due to the error in replacing a juror with an alternate during deliberations.

We also need not consider defendant’s contention that his confession should have been suppressed because it is not necessary to the disposition of this appeal.

III. CONCLUSION

For the foregoing reasons, we affirm the appellate court’s judgment reversing defendant’s convictions and remanding the matter for a new trial.

Appellate court judgment affirmed.