JUSTICE KILBRIDE, concurring in part and dissenting in part: I concur in the majority opinion’s conclusion that, under People v. Jones, 213 Ill. 2d 498 (2004), the appellate court lacked jurisdiction because J.T. failed to file a timely notice of appeal or request leave to file a late appeal. As noted by Justice Freeman in his dissent, Jones recognized, however, that specific situations may exist that dictate use of this court’s supervisory authority to provide relief. 221 Ill. 2d at 359 (Freeman, J., dissenting). I agree with Justice Freeman that when juveniles have no other avenue to meaningful review, this court should exercise its supervisory authority to provide relief. I therefore dissent from that part of the majority opinion refusing J.T.’s request to use this court’s supervisory authority to grant him relief. This court determined in William M., 206 Ill. 2d at 604-05, that a dismissal was too harsh a sanction for a juvenile’s failure to comply with Rule 604(d) when the juvenile does not have an adequate alternative means for presenting his claims. Accordingly, this court exercised its supervisory authority and remanded the cause to the circuit court for strict compliance with Rule 604(d). In re William M., 206 Ill. 2d at 604-05. This court should not ignore that juveniles may lose their right to appeal when the trial court provides incomplete and inaccurate admonishments, leaving minors with no means of raising their claims. Accordingly, fundamental fairness requires this court to exercise its supervisory authority to preserve the integrity of the juvenile justice system. The mandates of Rule 605(c) should be strictly enforced. In People v. Henderson, 217 Ill. 2d 449 (2005), a case interpreting the admonishment requirements of Supreme Court Rule 605(a), I dissented from the majority opinion because the majority failed to consider the plain language of that rule in holding that strict compliance was not necessary. See Henderson, 217 Ill. 2d at 470 (Kilbride, J., dissenting). In Henderson, I noted that although the majority’s analysis was supported by application of this court’s holding in People v. Davis, 145 Ill. 2d 240 (1991), I believe the better approach is to follow the plain language of Rule 605(a). In my view, the same holds true for Rule 605(c), and this court should interpret our admonishment rules according to the plain language of those rules. Like Rule 605(a), the plain language of Rule 605(c) also mandates strict compliance, and the only fair remedy for failure to comply with the requirements of Rule 605(c) is to remand the cause to the trial court for proper admonishments. Our rules of statutory construction apply with equal force to the interpretation of all supreme court rules. In re Estate of Rennick, 181 Ill. 2d 395, 404 (1998). The primary rule of statutory construction is to determine and give effect to the intent of the drafters of the rule. People v. Ramirez, 214 Ill. 2d 176, 179 (2005). The best evidence of intent is the plain language used by the drafter. King v. First Capital Financial Services Corp., 215 Ill. 2d 1, 26 (2005). When the drafter’s intent can be determined from the plain language of the rule, this court must give that intent effect without resorting to other interpretive aids. People v. Roberts, 214 Ill. 2d 106, 116 (2005). The plain language of Supreme Court Rule 605(c) could not be more straightforward. The rule states the trial court “shall” advise defendants who enter into a negotiated plea of guilty of certain appeal rights and requirements. Official Reports Advance Sheet No. 21 (October 17, 2001), R. 605(c), eff. October 1, 2001. The term “shall” indicates a mandatory obligation. See Ramirez, 214 Ill. 2d at 182; People v. Jamison, 181 Ill. 2d 24, 29 (1998) (interpreting Supreme Court Rule 605(b) to require strict compliance). Accordingly, the plain language of Rule 605(c) requires the trial court to give these admonitions in all cases when a defendant enters into a negotiated plea of guilty. This court should require strict compliance in accordance with the plain language of Rule 605(c). As I stated in Henderson, “[s]uch a conclusion is further supported by this court’s familiar maxim that £[t]he rules of court we have promulgated are not aspirational. They are not suggestions. They have the force of law, and the presumption must be that they will be obeyed and enforced as written.’ ” Henderson, 217 Ill. 2d at 471, quoting Bright v. Dicke, 166 Ill. 2d 204, 210 (1995). Strict compliance with the rules of this court is, thus, generally required. Village of Lake Villa v. Stokovich, 211 Ill. 2d 106, 116 (2004). As I further urged in Henderson, requiring strict compliance with our supreme court rules would have the benefit of easy application. As illustrated in the case before us, requiring strict compliance with these rules would alleviate this court’s need to review an abundance of cases when the trial court obviously gave inadequate admonishments and to apply justice on an ad hoc basis. In my opinion, the better course of handling cases when the trial court fails to comply strictly with the rule is to remand those cases to the trial court for proper admonishments. The defendant, here a juvenile, would then be allowed to request leave to withdraw the guilty plea to preserve the right to appeal. Again, this interpretation of Rule 605(c) would greatly simplify the process and eliminate unnecessary litigation on appeal. Because the plain language of Rule 605(c) requires strict compliance, this court should exercise its supervisory authority and remand the cause to the trial court for proper admonitions in accordance with Supreme Court Rule 605(c). In considering whether J.T. was prejudiced or denied real justice and, therefore, that “fundamental fairness” requires this court to grant supervisory relief, the majority concludes that J.T. “chose not to appeal because he was satisfied with his sentence.” 221 Ill. 2d at 348. That conclusion is mere conjecture and unsupported by the record. Contrary to the majority’s conclusion, J.T. has shown that he suffered prejudice as a result of the incomplete admonitions. First, the trial court simply told J.T. that all he needed to do was to “file a petition *** saying that you want to take everything back.” The trial court failed to mention that if J.T. wanted to appeal his guilty plea, he would have to do something more than simply ask the court to “take everything back.” Second, the trial court did not inform J.T. that, upon request of the State, any charges dismissed as a result of the plea would be reinstated. Third, the trial court stated that if J.T. could not afford a lawyer for his appeal, one would be provided for him, but did not tell him that counsel would be appointed to assist him with the preparation of the post-plea motions. Fourth, the trial court did not inform J.T. that transcripts of the proceedings would be provided to assist in the preparation of the motions. Fifth, the trial court failed to inform J.T. that any issues not raised in his postplea motions would be waived on appeal. The trial court’s incomplete admonishments prevented J.T. from having any meaningful understanding of the critical steps necessary to challenge his guilty plea. Contrary to the majority’s conclusion, J.T. could not have properly asserted his right to appeal based on the admonishments he received. Furthermore, J.T. would not have been aware of the procedure to file a late notice of appeal when he was never informed by the trial court that a notice of appeal was even necessary to seek review and was not informed of what procedures were required to begin the appellate process. There can be no question that J.T. has suffered prejudice and was denied real justice. This court should exercise its supervisory authority to grant him relief. Although I disagree with the majority’s refusal to exercise this court’s supervisory authority and remand the cause for proper admonishments, I concur in the majority’s decision not to address whether the Post-Conviction Hearing Act applies to juvenile proceedings. This issue is simply not ripe for this court’s consideration. First, J.T. has not attempted to file a postconviction petition, and any opinion this court might issue on the subject would merely be advisory. Additionally, it is not clear whether J.T. has standing to raise this issue. Therefore, the majority’s decision to decline the opportunity to address the issue of whether the Post-Conviction Hearing Act applies to juveniles is justified. Finally, I concur in the majority’s conclusion that juveniles are entitled to predisposition sentencing credit. For these reasons, I respectfully concur in part and dissent in part.