2022 IL App (2d) 210530-U
No. 2-21-0530
Order filed July 28, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-218 |
| BRIAN E. CHRISMAN, | ) ) ) | Honorable C. Robert Tobin III, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices Hudson and Birkett concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court did not err in summarily dismissing defendant's postconviction petition. Therefore, we affirm.

¶ 2     Following a jury trial, defendant, Brian E. Chrisman, was convicted of 10 counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2014)) and received consecutive sentences of 7½ years for each count. Defendant currently appeals from the summary dismissal of his postconviction petition. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Defendant previously filed a direct appeal of his convictions, arguing that he was not proven guilty beyond a reasonable doubt and that the trial court erred in refusing to declare a mistrial and in replacing a particular juror with an alternate. We affirmed, holding that the invited error doctrine applied to defendant's arguments about jury errors and that there was sufficient evidence to prove defendant guilty beyond a reasonable doubt of all counts. *People v. Chrisman*, 2021 IL App (2d) 190529-U, ¶¶ 38, 53, 67.

¶ 5    We restate the facts from the previous appeal regarding jury deliberations, as they also relate to defendant's arguments in this appeal.

¶ 6    The jury deliberated for several hours after closing arguments. The next morning, the trial court announced that juror number 10 had told the bailiff late the prior day that he wanted to talk to the trial court because there was an issue that he wanted to raise about another juror. The trial court had advised the attorneys that they would meet with the juror before the jury resumed deliberations. Juror 10 was brought in and stated that after a night's rest, he was wondering if the issue was that it was "heated" in the jury room yesterday and if he was "misreading personalities." The trial court asked if he could continue to deliberate, and the juror replied in the affirmative.

¶ 7    In the afternoon, the trial court stated that "[a]pparently there was an altercation" or "it's gotten loud between two jurors," to the point that there was pounding on the door and someone saying "let's take this outside." The bailiff then stepped between the jurors. The trial court stated that one juror was on his way to the chambers. The State stated that they could consider excusing both of the jurors and using the alternates. Defense counsel stated that whatever happened may have already prejudiced the jury pool.

¶ 8    Juror number 6 entered the chambers, and the trial court stated that it "sound[ed] like things may have gotten a bit heated down there." Juror 6 responded, "Really heated. I'm still shaking."

He stated that the other juror (juror number 2) said that he and a family member had experience with this type of case, and that juror 2 had done research on the statistics of such cases. Juror 2 kept making statements about "letting a rapist go." Juror 2 asked juror 6 if he would be able to sleep, and that if something happened after the case ended, he would be sure to call juror 6 and tell him about it. Juror 6 continued:

> "Today he made a statement about that I hope you're able to sleep at night if you vote a certain way. Yesterday I made a comment and it didn't quite come out the way I wanted it to, and he just jumped up, threw his hands up in the air, marched off to the bathroom. On the way there, he said, 'That's the most asinine statement I ever heard.' Yesterday towards the end of the day, I asked him to quit using the F word because he was doing a lot of that. So that's about it."

The trial court asked the parties if they had any questions of the juror, and they responded in the negative.

¶ 9   The trial court stated that it was inclined to find that the jury was hung and declare a mistrial. Defense counsel agreed, stating that a juror had apparently been intimidating and discussing outside sources. The State again suggested getting rid of both jurors and replacing them with the alternates, saying that each of them seemed to have a "faction" and that kicking out only one might signal approval of the other side. Defense counsel again raised the issue of the entire jury pool being tainted.

¶ 10   Juror 2 was brought into chambers and stated that "although [he] clearly [was] not getting along with a member of this jury and [did not] have very much respect for him, [he had] to see this through" because the jury had spent so much time working on the case. He admitted reading a

couple of psychology articles online about basic sexual assault statistics. Juror 2 said that he would make himself get along with juror 6.

¶ 11     After juror 2 left the chambers, defense counsel stated that they were talking to only three jurors and that he was concerned about the rest of the jury pool. The trial court stated that it did not disagree and that if they were going to continue by excluding one or two of the jurors, they would have to see if the remaining jurors could continue to deliberate based on everything that had happened. The trial court asked juror 10 to return. He stated that the "other person [was] very passionate about his side" and that there might be a need for one, if not both, alternates in the case. He said that juror 2 had read some statistics about abuses that are reported. Juror 10 said that it "was just information that [juror 2] wanted to put out there," and that it did not become a part of deliberations. Juror 10 thought that everyone on the jury was "pretty much on their stance as to what their votes" were and that they would not be able to negotiate further. When asked by the trial court if he thought that the jury could restart deliberations with the two alternates and come to a resolution, Juror 10 responded in the affirmative. He said that it would "neutraliz[e] the acidity of the situation."

¶ 12     After juror 10 left the room, the trial court stated, "Let's hear what everybody says." The State took the position that the statistics juror 2 recited were not something the jury focused on or discussed. It stated that putting in the alternates would get rid of the toxicity in the room, as juror 10 had stated. Defense counsel responded that it seemed like the jury was deadlocked and that he did not believe that there was sufficient evidence to get rid of jurors 2 and 6. He stated, "I don't think that it's proper to throw these two out and bring in two new jurors just because they have opposite views of what's going on." The trial court stated that it was not sure that they had opposite views. It stated that it did not believe that juror 2's language was a threat but that juror 6 was

shaking and having a difficult time based on what he perceived to be threats. Defense counsel stated that he did not disagree that juror 6 had "physical manifestations of what's going on." The trial court stated that juror 6 would need to be dismissed not because of his opinion, but rather based on him saying that he could not continue and how he looked when he said this.[1] That is, he was both physically and mentally unable to serve. The trial court's only concern about juror 2 was that his outside research was contrary to instructions. The trial court stated that, therefore, both jurors 6 and 2 would need to be removed, and the question was whether the trial could proceed with the remaining 10 jurors plus the two alternates. It stated that it would call up the 10 remaining jurors and ascertain if they could disregard the research and start from scratch with the two alternates. Otherwise, the trial court would declare a mistrial. The trial court asked, "Any thoughts? I mean, other than what you stated." Defense counsel replied, "No. I just think finding out from the rest of the jurors I think is probably real important." He then participated in a discussion about how the remaining jurors should be questioned.

¶ 13    The following dialogue subsequently took place:

>"THE COURT: All right. So I'm going to discharge those two after we've got the jurors addressed and then I'll bring each one maybe back up here individually and just thank them for their service and we'll figure out the escort, but we'll deal with all of that out there in—I guess it's in open court. Actually, it can't be open court. They're a jury deliberating. We'll clear the—we'll at least clear the courtroom.

>BAILIFF FAST: Okay. I'll do that now.

>THE COURT: Get people out of here.

---

[1]The record does not reflect that juror 6 directly made such a statement.

[DEFENSE COUNSEL]: Just for the record, Judge, I mean, obviously—*[Juror 6], are we in agreement he's going because of his physical inability?*

THE COURT: His mental as manifested by his physical. He started out—again, just to make a little record. He seems like he's got pretty good health, but he does use some sort of—he's got some sort of a limp or something to his gate [*sic*], but as he came up here this time, he was physically shaking and appeared distraught and indicated, as far as I was concerned, that he could—he could no longer participate in that because he felt that he was being threatened, but based upon the statements made, I don't really think those were threats as much as they were just communications that he didn't like.

[ASSISTANT STATE'S ATTORNEY]: [Juror 6] is the one who knocked on the door to request the bailiff; correct?

THE COURT: Yeah.

BAILIFF FAST: Yes. He opened the door and asked for a bailiff.

THE COURT: I think from his standpoint, he's unable to serve both physically and mentally. He's not willing to do what's required of a juror is to keep those communications going.

[DEFENSE COUNSEL]: *Okay.*

THE COURT: If they were actual threats, then I'd leave him in and remove the person making the threat. I don't see anything that—I don't see the statements that were being made by [juror 2] as threats to the point of removal. I do—my issue with [juror 2] is the outside research. That you can't do.

[DEFENSE COUNSEL]: *Right.*

THE COURT: So one removal is his inability and sort of his unwillingness to

continue to serve from [juror 6]. The other one [juror 2], he did exactly the opposite of what I asked. He went out and did his own research. So let's leave those two I guess down there with a sitter and bring the other two up—the other ten up into the jury box and I'll address them, and in the meantime, call in our alternates and get them in." (Emphases added.)

¶ 14 The trial court called in the 10 jurors and asked if there was anyone who would not be able to disregard one of the juror's outside research. No juror raised his or her hand. The trial court stated that the two alternates would join the group and that the 10 jurors would have to go back to the stage of having an open mind and consider the opinions of the alternates.

¶ 15 After the alternates joined, the jury returned a verdict in about 2 hours, finding defendant guilty of all counts.

¶ 16 On May 6, 2019, defendant filed a motion for a new trial. He raised the arguments presented on appeal, among others. He also filed a motion for judgment *n.o.v.* arguing that the evidence was insufficient to prove him guilty beyond a reasonable doubt. The trial court denied the motions on May 29, 2019. Regarding the removal of juror 6, the trial court stated that he was banging on the jury door to get out of the room, he was interpreting the statements of juror 2 to be threatening even though they were not, and he was shaking, which was a physical manifestation of the distress that he was in. The trial court stated that to send juror 6 back to the jury room may have put his physical and mental health in jeopardy, that he would not have been able to fulfill his duties, and that defendant never argued that he could continue to serve as a juror. Regarding juror 2, the trial court stated that it instructed the jury from the beginning not to do outside research. It stated that although this occurred, it did not become a point of discussion during deliberations, the jurors were advised that they could not consider the information, and the jurors were specifically

asked if any one of them could not disregard the information. The trial court further stated that the alternate jurors were not exposed to outside prejudicial influences, any concern about the original jurors forming opinions about the case was mitigated by the instruction to start over with an open mind, and the reconstituted jury was instructed to begin deliberations anew. The reconstituted jury took a little less than two hours to reach a verdict, and since there was not a lot of evidence to go over, the almost two-hour deliberations indicated that they started from scratch.

¶ 17     In his direct appeal, defendant argued, *inter alia*, that juror 6's removal deprived him of the right to a unanimous verdict rendered by an impartial jury. *Chrisman*, 2021 IL App (2d) 190529-U, ¶ 47. He argued that prejudice from the trial court's postsubmission replacement of the juror was shown by the original jurors' exposure to outside prejudicial influences in the form of juror 2's statistical research, by the trial court's failure to inquire about the alternate jurors' exposure to improper influence, by the original jurors forming opinions about the case prior to the addition of the alternates, and by the reconstituted jury returning a verdict within two hours. *Id.* ¶ 48. Defendant also argued that there was a reasonable possibility that the trial court dismissed juror 6 due to the juror's views about the case. *Id.* ¶ 49.

¶ 18     The State argued that the doctrine of invited error applied, and we agreed. *Id.* ¶¶ 51, 53. We stated that the record showed that defense counsel consented to jurors 6 and 2 being replaced with alternates rather than arguing for juror 6 to remain on the jury. *Id.* ¶ 53. We stated that even if invited error did not apply, defendant forfeited the issue by failing to argue at trial and in a posttrial motion that the trial court should have dismissed juror 2 but still kept juror 6. *Id.* ¶ 54.

¶ 19     On August 9, 2021, defendant filed a *pro se* postconviction petition. He argued that trial counsel was ineffective for (1) failing to properly preserve the issue of the trial court's dismissal of the "hold out juror" (juror 6) during jury deliberations, resulting in "waiver" of the issue on

review; (2) not arguing that defendant could not be guilty of predatory criminal sexual assault of a child because it requires that the child be under 13 years old, but the alleged victim lived in defendant's house well past her 13th birthday; (3) failing to "formally object" to juror 2 and his outside research, and seek a mistrial; and (4) not objecting to evidence that was irrelevant and overly prejudicial.

¶ 20    The trial court summarily dismissed defendant's petition on August 17, 2021. Regarding the issue of juror 6, the trial court stated that defendant could not show prejudice, as even if defense counsel requested that the juror remain on the jury, the trial court would have denied the request because it believed that juror 6 could not continue to serve based on his statements and physical manifestations of emotional distress. The trial court stated that there was also nothing to suggest that such a ruling would have been viewed by the appellate court as an abuse of discretion.

¶ 21    Defendant timely appealed.

¶ 22                                II. ANALYSIS

¶ 23    On appeal, defendant maintains that he stated an arguable claim that trial counsel was ineffective for failing to argue that "hold out" juror 6, who committed no misconduct and merely reported tensions within the jury room, should be allowed to continue to deliberate. Defendant argues that, liberally construed, his petition also alleges facts implicating appellate counsel's failure to raise this claim as a matter of ineffective assistance of trial counsel, so as to avert procedural default.

¶ 24    The Post-Conviction Hearing Act  (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a means for individuals serving criminal sentences to assert that their convictions resulted from substantial denials of their constitutional rights. *People v. Johnson*, 2017 IL 120310, ¶ 14. It creates a three-stage process for adjudicating postconviction petitions. *Id.* During the first stage, the trial

court independently determines, without input from the State, whether the petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1 (West 2020). A petition is frivolous or patently without merit only if it has no arguable basis in law or fact, meaning that it relies on an indisputably meritless legal theory or a fanciful factual allegation. *People v. Allen*, 2015 IL 113135, ¶ 25. A meritless legal theory is one that is contradicted by the record, and factual allegations are fanciful if they are fantastic or delusional. *People v. Knapp*, 2020 IL 124992, ¶ 45. At the first stage, the petition's allegations, liberally construed and taken as true, need to present only "the gist of a constitutional claim." *People v. Brown*, 236 Ill. 2d 175, 184 (2010).

¶ 25    If the trial court determines that the petition is not frivolous or patently without merit, the petition advances to second-stage proceedings during which the trial court may appoint counsel for the defendant, and counsel may file an amended petition. *People v. Patterson*, 2018 IL App (1st) 160610, ¶ 17. If the trial court does not dismiss the petition during the second stage, it will conduct an evidentiary hearing on the petition's merits during the third stage. 725 ILCS 5/122-6 (West 2020). We review *de novo* the first-stage dismissal of a postconviction petition. *People v. Hatter*, 2021 IL 125981, ¶ 24.

¶ 26    Defendant's postconviction petition alleged that his trial counsel rendered ineffective assistance of counsel. For such a claim, a defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Hodges*, 234 Ill. 2d 1, 17 (2009). The defendant must first establish that, despite the strong presumption that trial counsel acted competently and that the challenged action was the product of sound trial strategy, counsel's representation fell below an objective standard of reasonableness under prevailing professional norms such that he or she was not functioning as the counsel guaranteed by the sixth amendment. *People v. Manning*, 227 Ill. 2d 403, 416 (2008). Second, the defendant must establish prejudice.

*People v. Valdez*, 2016 IL 119860, ¶ 14. In most situations, this is done by showing a reasonable probability that the proceeding would have resulted differently absent counsel's errors. *Id.* A failure to establish either prong of the *Strickland* test precludes a finding of ineffectiveness. *People v. Peterson*, 2017 IL 120331, ¶ 79. At the first stage of postconviction proceedings, a defendant must make a showing that counsel's performance arguably fell below an objective standard of reasonableness and that the defendant was arguably prejudiced by the deficient performance. *Hatter*, 2021 IL 125981, ¶ 25.

¶ 27    The State argues that defendant forfeited his argument on appeal because he did not raise it in his postconviction petition. See *People v. Jones*, 211 Ill. 2d 140, 147 (2004) (issues reviewed on appeal of first-stage dismissal of postconviction petition must have been presented in the petition). The State notes that defendant argued in his petition:

> "Petitioner was denied his right to the effective assistance of counsel where defense counsel failed to properly preserve the issue of the trial court's dismissal of hold out juror during jury deliberations. The Appellate Court in its decision rendered on February 8, 2021[,] ruled that the issue was waived due to counsel's actions or inactions and refused to consider the issue raised on its merits."

The State points out that defendant currently takes the position that these allegations, liberally construed, stated a claim that counsel was ineffective for failing to argue that juror six should have been allowed to deliberate, and that appellate counsel was also ineffective for failing to avoid procedural default by framing the issue as one of ineffective assistance of trial counsel. The State argues that the trial court considered defendant's argument that juror 6 should not have been dismissed when ruling on defendant's motion for a new trial, and the trial court ruled that the dismissal and replacement was proper. The State asserts that despite the issue being clearly

presented in the record, appellate counsel did not raise it on appeal, and defendant's postconviction petition does not claim that his appellate counsel was ineffective.

¶ 28    We conclude that defendant did not forfeit his argument. He clearly raised the issue of ineffective assistance of trial counsel for not challenging the dismissal of the "hold out," juror during the trial itself, meaning that defendant was arguing that counsel should have argued in favor of keeping juror 6 on the jury. It is true that defendant did not directly raise the issue of ineffective assistance of appellate counsel in his petition, but doing so requires a higher level of legal procedural knowledge, whereas a *pro se* defendant is often "unaware of the precise legal basis for his claim or all the legal elements of that claim." *People v. Edwards*, 197 Ill. 2d 239, 245 (2001). "[B]y definition, a 'gist' of a claim is something less than a completely pled or fully stated claim." *Id.* A *pro se* petition is required only to allege enough facts to make out a claim that is arguably constitutional. *People v. Robinson*, 2021 IL App (1st) 181653, ¶ 34. Defendant here clearly identified his claim and also argued that this court did not consider this issue due to "waiver," so he sufficiently preserved the arguments that he raises on appeal.

¶ 29    Turning to the merits, defendant argues that instead of agreeing to dismiss juror 6, effective trial counsel would have done everything possible to keep him on the jury, as juror 6 never asked to be dismissed and it was apparent during questioning that he favored a not guilty verdict. Defendant notes that in ruling on his motion for a new trial, the trial court cited four reasons for removing juror 6: (1) he was "banging on the jury door to get out" of the jury room; (2) he was interpreting statements made by juror 2 as threatening when they were not; (3) he was shaking as a physical manifestation of his distress; and (4) defense's counsel's failure to argue at trial that juror 6 could have continued to serve as a juror. Defendant maintains that it was perfectly acceptable for juror 6 to alert the bailiff or the court to the increasingly toxic atmosphere in the

jury room, and that the record reflects that the courtroom bailiff had to separate the two men. Defendant asserts that there was no indication that juror 6 was the aggressor and that contrary to the trial court's belief, juror 6 was entirely justified in feeling threatened by juror 2. According to defendant, juror 2's hostility stemmed from juror 6's conviction that defendant was not guilty, as juror 6 said that juror 2 kept making statements about "letting a rapist go" and asking if juror 6 would be able to sleep after the case was over, and "if something would happen after this case was over, he'd be sure and call [him] and tell [him] about it."

¶ 30    Regarding juror 6's ability to continue serving, defendant argues that the juror never said that he was unwilling or unable to resume deliberations. Defendant argues that effective counsel would have pointed out that once juror 2 was removed for his gross misconduct, the source of juror 6's troubles would disappear. Defendant contends that the solution to juror 2's misbehavior was not to penalize defendant by removing a juror favorable to him. Defendant argues that because the trial court highlighted that defense counsel failed to advocate for juror 6's retention, it means that the trial court might have been receptive to such an argument had it been timely made, particularly when the removal of a juror mid-deliberations is not favored. See *People v. Roberts*, 214 Ill. 2d 106, 123-24 (2005) ("substitution of an alternate juror during deliberations involves substantial potential for prejudice").

¶ 31    As for the prejudice prong of the *Strickland* test for ineffective assistance of counsel, defendant maintains that he has stated an arguable claim that he was prejudiced by counsel's failure to object to juror 6's dismissal. Defendant points out that in evaluating prejudice when determining whether the trial court abused its discretion in the postsubmission replacement of a juror, we consider the totality of the circumstances, including:

"(1) whether the alternate juror and the remaining original jurors were exposed to outside prejudicial influences about the case; (2) whether the original jurors had formed opinions about the case in the absence of the alternate juror; (3) whether the reconstituted jury was instructed to begin deliberations anew; (4) whether there is any indication that the jury failed to follow the court's instructions; and (5) the length of deliberations both before and after the substitution." *People v. Roberts*, 214 Ill. 2d 106, 124 (2005).

Defendant argues that the trial court never determined whether the two alternate jurors had been exposed to prejudicial outside influences; that factor 2 is met because juror 6 had clearly formed an opinion and was leaning towards an acquittal and that juror 10 had stated that everyone was "pretty much on their stance as to what their votes" were; and that the trial court instructed the reconstituted jury to begin deliberations anew, but the record reflects that they failed to do so because the original jury had deliberated for just under five hours and asked two questions whereas the reconstituted jury deliberated for less than two hours and asked no questions before finding defendant guilty.

¶ 32    Last, defendant argues that appellate counsel was also ineffective in that counsel raised the dismissal of juror 6 as a matter of trial court error but failed to consider the obvious problem posed by invited error, which could have been avoided via a challenge of ineffective assistance of trial counsel. See *People v. Henderson*, 2016 IL App (1st) 142259, ¶ 210 ("The doctrine of invited error blocks defendant from raising this issue on appeal, absent ineffective assistance of counsel.").

¶ 33    The State asserts that applying the *Roberts* factors, the totality of the circumstances establishes that defendant was not prejudiced by the trial court's decision to remove juror 6 and install an alternate juror. Regarding whether the original jurors had formed opinions about the case, the State argues that defendant's claim that juror 6 was a "hold out" juror is nothing more than

pure speculation. The State points out that the trial court advised all of the jurors questioned not to disclose the actual deliberations and anyone's positions. The State notes that after defense counsel stated, "We have two people that have opposite opinions and how they're handling it in the back is not good," the trial court responded, "I'm not sure that they have the opposite views going on. We don't have any idea what the views are." The State argues that the trial court further clearly and properly instructed the reconstituted jury to begin deliberations anew. The State argues that there is no evidence that the reconstituted jury failed to heed the trial court's instructions, as it deliberated for almost two hours. The State points to the trial court's statement, "There wasn't a whole lot of evidence so for them to go and give it almost a two-hour run I think showed that they started over from scratch."

¶ 34    The State distinguishes this case from *People v. Gallano*, 354 Ill. App. 3d 941 (2004), where the court stated that if the record discloses any reasonable probability that the impetus for a juror's dismissal is the juror's views on the case's merits, the trial court may not dismiss the juror and must either have the jury continue to deliberate or declare a mistrial. The State argues that here, juror 6 never disclosed his position in the case, and, regardless, the impetus behind his dismissal was clearly his physical and emotional state after his altercation with juror 2.

¶ 35    The State further contends that it was not arguably deficient performance for defense counsel to acquiesce in the removal of a juror who was clearly shaken and distressed, as the juror might not be able to remain firm in a position or carefully weigh and consider the evidence in that state. The State argues that, correspondingly, it was not arguably deficient performance for appellate counsel to decline this issue on appeal. The State reasserts that defendant also cannot show prejudice.

¶ 36    We conclude that the trial court did not err in summarily dismissing defendant's postconviction petition, as defendant failed to show that he was arguably prejudiced by defense counsel's decision to acquiesce in the dismissal of juror 6. See *People v. Coats*, 2021 IL App (1st) 181731, ¶ 26 (as both prongs of the *Strickland* test for ineffective assistance of counsel must be satisfied, courts may resolve an ineffectiveness claim in a postconviction petition by reaching just the prejudice prong). The trial court would not arguably have allowed juror 6 to stay even if defense counsel had requested it, as the trial court stated in ruling on defendant's posttrial motion that sending juror 6 back to the jury room may have put his physical and mental health in jeopardy, and that the juror would not have been able to fulfill his duties.

¶ 37    The decision to replace juror 6 would also not arguably have been reversed on appeal, even if the issue had been preserved or if appellate counsel had raised the issue of ineffective assistance of trial counsel. Again, "postsubmission replacement of a juror is permissible under limited circumstances, and the decision whether to proceed in that manner is within the discretion of the trial court." *Roberts*, 214 Ill. 2d at 109. The primary consideration in determining whether the trial court abused its discretion is the potential prejudice to the defendant as a result of the replacement. *Id.* at 121. In evaluating prejudice, we consider the totality of the circumstances, including applying the factors set forth in *Roberts* (see *supra* ¶ 32).

¶ 38    For the first *Roberts* factor, the alternate jurors were not exposed to the statistics at issue and there is no evidence of exposure to any other improper influences. The remaining original jurors heard the statistics, but juror 10 stated that the information did not become a part of deliberations, and when the remaining jurors were asked if there was anyone who would not be able to disregard the information, no one raised his or her hand. For the second factor, juror 10 stated that "everybody is pretty much on their stance as to where their votes" were, but he then

stated that if the alternates were brought in, it would "neutraliz[e] the "acidity of the situation" and that they could all "respect each other's evidence." Regarding the next two factors, the trial court instructed the jury to restart deliberations, and there was no indication that the jury failed to follow the instruction. Rather, the last factor supports the notion that the reconstituted jury followed the instruction, as they deliberated for about two hours on a case that largely hinged on credibility, with very little other evidence to evaluate. Although the jury had deliberated for five hours before, this was presumably in part because of the conflict between jurors 2 and 6.

¶ 39    We agree with defendant that juror 6 never directly requested to be relieved of duty. Further, although the trial court repeatedly told the jurors it questioned not to disclose the substance of deliberations or jurors' votes, juror 6 still made a reference to juror 2 making statements about "letting a rapist go," which could indicate their views of the evidence. However, unlike *Gallano*, there is not a reasonable probability that the trial court's impetus for dismissing juror 6 was based on his views. The trial court repeatedly told the jurors not to disclose their views during the questioning, which shows that its intent was to remain neutral. More significantly, it is undisputed that juror 6 banged on the jury door because he was so concerned about juror 2, and even when he was out of juror 2's presence, his physical shaking, which defense counsel acknowledged, showed that he was still in distress. As such, it would have been within the trial court's discretion to determine that simply dismissing juror 2 would not have resolved juror 6's physical and mental agitation. Accordingly, defendant cannot show arguable prejudice from his trial counsel's failure to assert that juror 6 should remain on the jury, such that the trial court did not err in dismissing defendant's postconviction petition at the first stage of proceedings.

¶ 40                                III. CONCLUSION

¶ 41    For the reasons stated, we affirm the judgment of the circuit court of Boone County.

¶ 42      Affirmed.