## Woods v. Commonwealth.

June 20, 1941.

W. H. Lewis and Scott E. Duff, for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

This appeal is from a judgment sentencing appellant, Hamblin Woods, to 21 years confinement in the penitentiary for the voluntary manslaughter of Tom Deaton. The details of the difficulty during which the killing occurred are fully stated in Woods v. Com., 282 Ky. 596, 139 S. W. (2d) 439, wherein a judgment was affirmed by which the father of appellant was sentenced to the penitentiary for life for the murder of Graydon Morgan. For the purposes confronting us it is sufficient to say that Oma Mattingly, who was with Mittie Lyons, wife of Clifford Lyons, had been arrested by appellant and his father on the court square of Hyden for being publicly drunk—the appellant was deputy sheriff and had deputized his father to assist him. Someone ran into the house of Tom Deaton, who lived on the court square, and with whose family the women had been associating during the morning, and notified him and Lyons what had happened. Lyons and Deaton thereupon ran out of the house and, according to testimony for the Commonwealth, when appellant saw them approaching he took deliberate aim at Deaton with his pistol and killed him. According to evidence for appellant, Lyons and Deaton, when they came out of the Deaton home, each had pistols, and when they approached appellant and his father, who had Mrs. Mattingly under arrest, Deaton said to appellant's father, "You son of a bitch, turn that woman loose," and fired at him, whereupon appellant's father fell to his knees, and appellant then turned and shot Deaton; Lyons then opened fire on appellant and his father and then a deputy sheriff appeared on the scene and took Lyons' pistol and placed him under arrest. At this stage Morgan appeared on the scene and was shot and killed by appel-

lant's father. The evidence was highly conflicting as to whether or not Mrs. Mattingly was drunk.

By the sixth instruction the jury were told in substance that if Oma Mattingly was drunk in a public place in the presence of appellant, he had the right to arrest her without a warrant and that if the deceased, acting in concert with others, attempted by force to effect her release, the appellant had the right to use such force as reasonably appeared to him to be necessary to overcome such force or violence on the part of the deceased in his effort to effect the woman's release even to the point of killing the deceased, and that they should acquit appellant if they believed that it reasonably appeared to him that he could not overcome such violence except by killing the deceased.

It is contended that this instruction was erroneous in that it required the jury to believe that Mrs. Mattingly was drunk in a public place, in short, guilty of the offense for which she had been arrested, thereby limiting the right of appellant to prevent the rescue of his prisoner only to a lawful arrest made by him. Obviously, the effect of the instruction was that if Mrs. Mattingly was not drunk the deceased was justified in attempting to effect her release by force or violence. It is generally held that it is no crime for one, without the use of violence, to rescue or assist in the rescue of another who has been unlawfully arrested. 54 C. J. 696; 10 R. C. L. 585; People v. Ah Teung, 92 Cal. 421, 28 P. 577, 15 L. R. A. 190; State v. Rollins, 113 N. C. 722, 18 S. E. 394. The same authorities, however, hold that even when an arrest is illegal, third parties have no right to assault an officer to effect a rescue. See also State v. Armistead, 106 N. C. 639, 10 S. E. 872; Rex v. Almey, 3 Jur. N. S. 750; State v. Garrett, 80 Iowa 589, 46 N. W. 748. It appears to us the rule announced by these authorities is sound. This being true, the right of appellant to prevent the release of his prisoner by force or violence should not have been predicated on the fact that she was actually guilty of the offense for which she had been arrested. The instruction was erroneous in that particular.

The next contention is that the court improperly permitted the substitution of a thirteenth, or alternate, juror after the jury began its deliberations on the case. A thirteenth juror was impaneled pursuant to Section

191 of the Criminal Code of Practice. After the case had been submitted to the jury and the jury had deliberated for sometime, they returned into court and announced that they were unable to agree on a verdict. Sometime thereafter, the length of time not being shown by the record, the court on its own motion released one of the jurors whose father had died the previous day in order to permit that juror to attend the funeral. The order recites that this fact had been made known to the court, without reciting in what manner the court had received the information. The appellant objected to the discharging of the juror and the substitution of the thirteenth juror in his place and moved to discharge the jury. The objection and motion were overruled and shortly thereafter the verdict of guilty was returned.

It is unnecessary for us to determine the correctness of the court's action in discharging the juror to attend the funeral of his father since we have reached the conclusion that, in any event, the court had no right after the jury began its deliberations to substitute the thirteenth juror. Section 191 of the Criminal Code of Practice, which provides for the impaneling of a thirteenth juror, reads in part as follows:

> "A thirteenth juror may be selected and qualified and throughout the trial shall be treated as one of the jury, provided however, that said thirteenth juror shall take no part in the deliberations or verdict of the jury except when one of the twelve has been excused by the court upon some reasonable ground."

The quoted language of the code makes it apparent that it was not the legislative intent that the thirteenth juror could be substituted after the jury began its deliberations. By that language the thirteenth juror is prohibited from taking any part in the deliberations or verdict of the jury except when one of the twelve has been excused. That means, of course, that the thirteenth juror cannot go to the jury room with the jury when it begins its deliberations. His presence in the jury room, when the jury is deliberating on the case, would undoubtedly mean taking a part in the deliberations of the jury. It was so held by the California court in People v. Britton, 4 Cal. (2d) 622, 52 P. (2d) 217, 102 A. L. R. 1065, adopting the holding of that court in People v. Bruneman, 4 Cal. App. (2d) 75, 40 P. (2d) 891, even

though pursuant to a statute of that state the alternate juror might be substituted for one of the regular jury after the final submission of the case to the jury. Since the thirteenth juror could not go to the jury room with the jury while they were deliberating, he would necessarily be separated from the other jurors, and this, in itself, would be sufficient to prevent him thereafter from being a legal member of the jury, since Section 244 of the Criminal Code of Practice, requires that in cases of this character the jurors, after they are accepted, if all of the same sex, shall not be permitted to separate but shall be kept together in charge of the proper officers. We hold that when the case has been finally submitted to the jury, the function of the thirteenth juror ceases and he should be discharged. We may remark that the Attorney General, in briefing the case for the Commonwealth, concedes that the trial court's action in substituting the thirteenth juror after submission of the case to the jury was reversible error.

Judgment reversed with directions to set it aside and for proceedings not inconsistent with this opinion.

Whole court sitting.