Mark THURMAN, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Court of Appeals of Kentucky.

Dec. 12, 1980.

Discretionary Review Denied
March 3, 1981.

Arthur L. Brooks, Lexington, for appellant.

Steven L. Beshear, Atty. Gen., W. Bruce Cowden, Jr., Asst. Atty. Gen., Frankfort, for appellee.

Before HAYES, C. J., and BREETZ * and GUDGEL, JJ.

HAYES, Chief Judge.

Mark Thurman appeals from a judgment of the Fayette Circuit Court which, after a jury verdict of guilty of criminal possession of a forged instrument in the second degree, sentenced him to a four (4) year sentence on each count of a three (3) count indictment.

The trial court admitted into evidence the transcripts of taped conversations between Thurman and Mike Kirk. Kirk, at the request of the police, agreed to telephone Thurman and to allow the conversations to be recorded by the police. Thurman, of course, had no knowledge that the conversations were being taped nor did he consent to any such recording.

Prior to his trial Thurman moved to suppress the use of the tapes on the ground that the obtaining of the tapes constituted a violation of his right to be free from unreasonable searches and seizures. The motion was overruled and the tapes later admitted with the exception of certain portions deemed irrelevant and immaterial.

At the beginning of the trial, thirteen (13) jurors were selected to hear the case. After the proof was taken, final arguments made, and the jury instructed, the clerk drew the name of Walter Peyton from the names of all thirteen (13) jurors. Peyton was then discharged as a juror. The case was submitted to the remaining jurors for deliberation. Shortly after the jury retired, one of the jurors fell ill and was taken to the hospital. The trial judge, upon learning that Peyton was still in the building, summoned him to his chambers. Upon being questioned by the trial court and by both counsel as to his activities and whereabouts

* The decision was reached prior to Judge Breetz's departure from the Court.

since his discharge, Peyton was returned to the jury over Thurman's objections. The jury again deliberated and returned the guilty verdict.

Thurman argues on appeal that the trial court erred in admitting the taped conversations into evidence and that the trial court erred in recalling the thirteenth juror who had been previously discharged.

■■■ Thurman argues that the warrantless conversations, to which he did not consent, constitute unreasonable searches and seizures. Thurman's argument, while persuasive, encounters one stumbling block, the case of *Commonwealth v. Brinkley*, Ky., 362 S.W.2d 494 (1962). That case clearly certified that a taped conversation was admissible when consented to by the party to whose receiver was attached the recording device. Thurman asks us to overrule *Brinkley*, but we cannot. We are bound by the law as stated by the highest court of the Commonwealth. Therefore, under *Brinkley*, the trial court properly admitted the tapes.

■■■ Thurman next charges as error the reseating of the thirteenth juror, Peyton, after he had been discharged and the twelve had begun their deliberations. RCr 9.32 provides in part:

> If the membership of the jury consists of more than the number required by law, immediately before the jury retires to consider its verdict the clerk, in open court shall place the name of each juror on a separate piece of paper, . . . and put it in a box . . . . The clerk, after mixing the names, shall draw from the box sufficient names . . . to reduce the jury to the number required by law.

The rule states that the jury be reduced to the number legally required. In the instant case, Peyton was discharged from the panel prior to the jury's retiring. The discharging of Peyton released him from his oath and relieved him of his responsibilities as a juror. There were only twelve jurors, when deliberations began. When one of the twelve jurors required hospitalization, the jury was reduced to eleven. We sympa-

thize with the trial court faced with this dilemma, especially if the trial has been a long one. Unfortunately we have found no procedure for augmenting a jury to increase its number to that required by law once the jury has begun deliberating. The trial court undertook to do so by reseating the discharged juror. The trial court believed that since only about an hour had elapsed that there was no harm in reseating Peyton, even though the trial court stated that when Peyton was discharged he was no longer on the panel, and because there were twelve jurors to decide the case.

The Commonwealth takes the position that since Peyton's separation was brief and his testimony was to the effect that he had not been influenced by anyone or formed any opinions about the case, the trial court could properly reseat him. In support of this argument, we are cited authorities concerning the sequestration of juries. The issue however is not whether Peyton, a juror, had been subject to outside influence, but whether Peyton was a juror at all. We think he was not. Once Peyton was discharged from the panel he could not be recalled.

In the case of *Woods v. Commonwealth*, 287 Ky. 312, 152 S.W.2d 997 (1941) it was held improper to excuse a juror and replace him with a thirteenth juror after deliberations had begun. *Woods* was construing § 191 of the Criminal Code of Practice which provided that the thirteenth juror would take no part in the deliberations except when a juror had been excused. The *Woods* court held that when a case was submitted to the jury, the thirteenth juror should be discharged because his function has ceased. While the present RCr 9.32 is not worded the same as § 191, we believe that the rule is an embodiment of the *Woods* holding, when RCr 9.32 requires the jury to be reduced to its legal number prior to the jury's retiring. The trial court should have granted Thurman's motion for mistrial.

The judgment is reversed and the cause remanded for a new trial.

All concur.