**Mark Lee CROSSLAND, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

**No. 2007–SC–000689–MR.**

Supreme Court of Kentucky.

Aug. 27, 2009.

Julia Karol Pearson, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Jason Bradley Moore, Assistant Attorney General, Office of Criminal Appeals, Attorney General's Office, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

## I. INTRODUCTION.

Shortly after submitting this case to the jury, the trial court excused one of the jurors and replaced him with a discharged alternate juror, who was apparently located and returned to the courthouse. Such a post-submission substitution of jurors is reversible error under current Kentucky precedent if the error is preserved.[1] By contrast, we held in an unpublished case that such a post-submission substitution did not require reversal if the error is unpreserved.[2] Having re-examined the post-submission juror substitution issue in this appeal, we remain convinced that a trial court lacks the authority to order post-submission substitution of a juror. But we now also hold that a post-submission substitution error is subject to harmless error analysis. The substitution error

---

1. *Thurman v. Commonwealth*, 611 S.W.2d 803, 804 (Ky.App.1980); *Woods v. Commonwealth*, 287 Ky. 312, 152 S.W.2d 997, 999 (1941).

2. *Holland v. Commonwealth*, No.2004–SC–0111–MR, 2005 WL 2045375 at *3–4 (Ky. Aug.25, 2005).

is not harmless in this case because the trial court failed (1) to ascertain by a colloquy on the record that the replacement juror had not been tainted by outside contacts after being discharged and (2) to order the reconstituted jury to start their deliberations over after the replacement joined them.

## II.  FACTUAL AND PROCEDURAL HISTORY.

A jury convicted Crossland of second-degree arson, first-degree burglary, two counts of theft by unlawful taking (of a firearm), second-degree cruelty to animals, and of being a persistent felony offender in the second degree (PFO 2).[3]  The jury recommended PFO 2–enhanced sentences of thirty-years' imprisonment each for the burglary and arson convictions and seven-years' imprisonment each for the theft by unlawful taking convictions, all to run consecutively for a total recommendation of seventy-four years' imprisonment.[4]  In the final judgment, the trial court properly reduced that sentence to seventy years' imprisonment,[5] after which Crossland filed this appeal.

## III.  ANALYSIS.

Crossland raises three main issues. First, he contends that the trial court erred by substituting an alternate juror for a juror who was excused after the case had been submitted to the jury.  Second, he contends that the trial court erred by failing to direct a verdict of acquittal on the arson charge.[6]  And, third, Crossland contends that the Commonwealth engaged in prosecutorial misconduct four times in statements made during its closing argument. We agree that the juror substitution was reversible error under the facts of this case but find no reversible error in any of the other issues.

A.  The Trial Court Erred By Replacing a Juror After Deliberations Had Begun.

We must decide if the trial courts of this Commonwealth have the authority to engage in post-submission juror substitutions.  We conclude that they do not. Having determined that such substitutions are erroneous, our next inquiry is whether those errors should be subject to harmless error analysis.  Although previous cases did not use harmless error analysis, we conclude that such juror substitution errors are subject to harmless error analysis, but only if the error is properly preserved.  Finally, we must decide whether the error in this case was harmless.  We conclude that it was not.

1.  Relevant Facts on the Juror Substitution Issue.

---

3.  Oddly, the circuit court record provided to us does not contain the indictment.  Instead, the record we have begins shortly before trial. In addition, Crossland's brief references videotapes of the trial as having occurred in November 2007.  Since the trial occurred in July 2007, we will assume the references to a November trial are typographical errors.

4.  The jury recommended incarceration for eight months and a $350 fine for the misdemeanor cruelty to animals conviction.

5.  See Kentucky Revised Statutes (KRS) 532.110(1)(c).

6.  The heading for this argument in Crossland's brief states that "[c]ircumstantial evidence of arson, assault, and manslaughter failed to meet Kentucky's standards for sufficiency."  Crossland was not convicted of assault or manslaughter, so we will assume that the references to those offenses are typographical errors and that Crossland only argues that his arson conviction was unsupported by evidence sufficient to withstand a motion for directed verdict.

Approximately fifteen minutes after the case had been submitted to the jury in the guilt phase, the trial court appeared on the record stating that one of the jurors had previously been excused from jury duty by the Chief Circuit Judge because the juror had advised the Chief Circuit Judge that he could not sit in judgment of another. After the trial court stated that an alternate juror was available, the Commonwealth suggested that the alternate should take the place of the juror in question. The trial court agreed with the Commonwealth and ordered the alternate juror to be located and returned to the courthouse so he could join the already deliberating jury.

Shortly afterwards, the trial court called the jury back into the courtroom. At the bench, the trial court asked the juror who had previously been excused by the Chief Circuit Judge why he had not spoken up during voir dire. Unfortunately, the juror's answer was somewhat unintelligible. The trial court then dismissed that juror[7] and informed the remaining eleven jurors that something had happened, and the alternate juror was on his way back to join their deliberations. The trial court ordered the jury not to deliberate until the new juror arrived. As the trial court was leaving the bench, the Commonwealth Attorney asked if the new juror needed to be re-sworn; but the trial court's answer (if any) was not audible. The proceedings then went off the record.

A little over an hour later, the proceedings came back on the record after the jury informed the trial court that it had reached a verdict. Before the jury was brought into the courtroom to announce its verdict and before Crossland's counsel apparently knew what the verdict would be, she objected to the post-submission substitution of the alternate juror. The Commonwealth stated the objection was belated, to which Crossland's attorney stated she planned to object when the alternate arrived and was re-sworn but did not make her objection then because there had been no additional proceedings on the record. The trial court overruled the objection, citing an unnamed federal case as authority for the replacement of the discharged juror with the alternate juror.

2. *Trial Courts Lack the Authority Under Kentucky Law to Engage in a Post–Submission Juror Substitution.*

█ Kentucky precedent clearly holds that a trial court errs by replacing a juror with an alternate juror, who has been previously discharged, once the jury has begun deliberating. We believe that precedent is sound.

In a case decided by our predecessor court, the jury had been deliberating for an unspecified amount of time when the trial court, over the defendant's objection,

---

7. Because it is not necessary to the resolution of this case, we express no opinion on the propriety of the dismissal of the juror. Obviously, the juror should have notified the parties and the trial court during voir dire of his supposed reluctance to sit in judgment of another. His failure to do so could possibly have meant that he no longer deemed himself unable to sit in judgment of another. Accordingly, better practice would have been for the trial court to engage in a colloquy with the juror to ensure that he persisted in his previously self-professed inability to sit in judgment of another. The need for a colloquy is reinforced by the fact that the juror excusal form signed by the Chief Circuit Judge excused the juror for an indefinite period of time due to "[e]xtreme [i]nconvenience[.]" An inability to sit in judgment of another does not appear to us to be an "extreme inconvenience." In other words, there appeared to be no inherent statutory or constitutional reason why the juror could not serve (*i.e.*, not being a United States citizen, being a convicted felon, *etc.*), meaning that the issue should have been fleshed out by the trial court.

discharged one juror in order to permit that juror to attend his father's funeral, then substituted a thirteenth juror (*i.e.*, an alternate juror) in the discharged juror's place.[8] Our predecessor court held that "the court had no right after the jury began its deliberations to substitute the thirteenth juror[,]" even though the then-applicable Criminal Code of Practice permitted the selection and qualification of a thirteenth juror. And "when the case has been finally submitted to the jury, the function of the thirteenth juror ceases and he should be discharged."[9] Our predecessor court did not address whether that erroneous juror substitution was a harmless error, perhaps because the Commonwealth had conceded on appeal that the substitution was a reversible error.[10]

The Court of Appeals confronted a similar situation in *Thurman*. In that case, an alternate juror heard all of the evidence but was discharged after closing arguments.[11] Shortly after the discharge of the alternate, one of the jurors fell ill and needed to be hospitalized. The trial court called the discharged alternate juror back to the judge's chambers. In a notable departure from the present case, the trial court and counsel questioned the alternate juror about his activities and whereabouts since his discharge.[12] Over the defendant's objections, the trial court returned the discharged alternate to the jury.

On appeal, the Court of Appeals held that the substitution of the discharged alternate juror was erroneous because "the discharging of [the alternate juror] released him from his oath and relieved him of his responsibilities as a juror."[13] Although the Court of Appeals expressed empathy to the trial court's quandary, it "found no procedure for augmenting a jury to increase its number to that required by law once the jury has begun deliberating."[14]

The Court of Appeals recognized that *Woods* was based upon the former Criminal Code of Practice but believed that the then-applicable Kentucky Rules of Criminal Procedure (RCr) 9.32, which required the clerk randomly to reduce the number of jurors to the number required by law before the jury retired to consider its verdict, was "an embodiment of the *Woods* holding...."[15] So "[o]nce [the alternate juror] was discharged from the panel he could not be recalled[,]" meaning that "[t]he trial court should have granted Thurman's motion for mistrial."[16] The Court of Appeals, however, did not engage in any analysis of whether the erroneous substitution could have been a harmless error.

RCr 9.32, the rule upon which *Thurman* was based, was abolished in 1981; and we have not enacted a similar provision in our Rules of Criminal Procedure. But Kentucky Rules of Civil Procedure (CR) 47.02 contains an express provision analogous to the former RCr 9.32. Since there is no criminal rule to the contrary, CR 47.02 applies to criminal cases.[17]

8. *Woods,* 152 S.W.2d at 998.

9. *Id.* at 998–99.

10. *Id.* at 999.

11. *Thurman,* 611 S.W.2d at 803.

12. *Id.* at 803–04.

13. *Id.* at 804.

14. *Id.*

15. *Id.*

16. *Id.*

17. RCr 13.04 provides that "[t]he Rules of Civil Procedure shall be applicable in criminal proceedings to the extent not superseded by or inconsistent with these Rules of Criminal Procedure." CR 47.02's applicability to

Under CR 47.02, a trial court may empanel up to two additional jurors. Significantly, that rule provides only for a pre-submission substitution of an alternate. CR 47.02 provides that "[i]f the membership of the jury exceeds the number required by law, immediately before the jury retires to consider its verdict the clerk, in open court, shall ... reduce the jury to the number required by law, whereupon the jurors so selected for elimination shall be excused." In the case now before us, the trial court's decision to order a post-submission juror substitution finds no support in CR 47.02.

We are aware that when the trial court discharged the alternate juror and allowed him to leave the courtroom after closing arguments, it admonished the alternate juror not to discuss the case with anyone or to make any ultimate conclusions about the case. But this admonition to the discharged alternate was not effective for replacement purposes.

█ *Thurman* specifically holds that discharging an alternate juror relieves him of his responsibilities as a juror.[18] Likewise, CR 47.02 requires the jury to be reduced to twelve members before retiring to consider its verdict, whereupon any additional jurors (*i.e.*, alternates) "shall be excused." So when the twelve jurors retire to deliberate, any alternate jurors are necessarily discharged from further jury service regardless of any limiting oral in-

struction from the trial court. Even if we assume for argument that the juror had not been fully "discharged" from service because of the trial court's parting admonition, the trial court erred by simply permitting that juror to join the other eleven jurors without undertaking any colloquy with the returning alternate to ensure that he had not discussed the case with anyone or otherwise encountered any circumstance after leaving the courtroom that might have affected his ability to serve as an impartial juror.[19]

The third and most recent time this post-deliberation substitution problem has been addressed by Kentucky's appellate courts was in our recent unpublished decision in *Holland*.[20] In *Holland*, the jury had deliberated for about two hours when a school principal notified the court that one of the juror's children had suffered a seizure and was in the hospital. The trial court then discussed its options with counsel, and defense counsel suggested substituting the dismissed alternate juror for the juror whose child had fallen ill. The trial court ultimately agreed, and the alternate juror was recalled and substituted.[21]

On appeal, the appellant relied upon *Thurman* for the proposition that the post-deliberation substitution was erroneous. Nevertheless, we refused to reverse, instead holding that the appellant

criminal cases was recognized by the Court of Appeals in *Hubbard v. Commonwealth*, 932 S.W.2d 381, 382 n. 1 (Ky.App.1996); and we have also cited CR 47.02 in criminal cases, albeit for different reasons. *See, e.g., Lester v. Commonwealth*, 132 S.W.3d 857, 862–63 (Ky. 2004).

18. *Thurman*, 611 S.W.2d at 804.

19. *See, e.g., People v. Roberts*, 214 Ill.2d 106, 291 Ill.Dec. 674, 824 N.E.2d 250, 259–61 (2005) (holding that postsubmission juror substitution was permissible but reversing be-

cause, among other things, the trial court had not taken steps to ensure that the alternate juror had not been biased due to outside influences); *Hayes v. State*, 355 Md. 615, 735 A.2d 1109, 1121 (1999) ("Assurance that the alternate juror remains qualified to serve is a prerequisite to a substitution and, unless waived by the defendant, must be established on the record.").

20. 2005 WL 2045375.

21. *Id.* at *2

had waived the issue.[22] More specifically, we observed that defense counsel had "expressed her support" for recalling the alternate juror and that it was "simply impermissible ... for defense counsel to advocate one course of action at trial, then appeal the trial court's decision to follow that very recommendation."[23]

■ Admittedly, *Woods, Thurman,* and *Holland* are distinguishable in many respects. But we find nothing in any of the three cases that would authorize the post-submission substitution of a juror. Similarly, we find nothing in our procedural rules or statutes to authorize a post-submission substitution of a juror. CR 47.02 requires the alternate jurors to be excused "immediately before the jury retires to consider its verdict...." We must conclude that a trial court simply lacks the authority under Kentucky law to order a juror substitution after the jury has begun deliberation.

The trial court attempted to justify its decision to recall the alternate juror by discussing an unnamed federal case. But the trial court erred by relying upon federal law on this point for two reasons. First, as previously discussed, Kentucky law specifically forbids post-submission juror substitutions. Second, federal law specifically permits the post-submission substitution of

a juror.[24] Similarly, other states have court rules or statutes that would permit post-submission juror substitutions.[25] In contrast, under Kentucky law, there must be twelve jurors in trials in circuit court;[26] but the parties may stipulate "that the jury shall consist of any number less than twelve (12), except that no jury shall consist of less than six (6) persons."[27] However, such a stipulation can only be made "at any time before the jury is sworn...."[28] So, unlike the law in federal court or the law in some other states, Kentucky's trial courts have no authority to force the parties to accept the verdict of a jury composed of less than twelve members or unilaterally to order the post-submission substitution of a juror.

Reasonable minds could perhaps differ about whether we should provide a mechanism for the post-submission substitution of a juror. After all, we are empathetic to the quandary faced by trial courts and the parties who have invested time and resources in a jury trial only to discover during deliberation that a juror must be excused. But current Kentucky law does not authorize such post-submission substitutions.

3. *Post-submission Juror Substitution Errors are Subject to Harmless Error Analysis.*

---

**22.** *Id.* at *4.

**23.** *Id.*

**24.** *See* Federal Rules of Criminal Procedure 23(b)(3) (permitting a jury of eleven to return a verdict, even without the parties' agreement, if the court finds good cause to excuse a juror) and FRCrP 24(c)(3) (authorizing the retention of alternate jurors after the jury retires to deliberate, and requiring trial court to instruct the jury to begin deliberations anew if an alternate replaces a juror after the jury had begun deliberating).

**25.** *See* 75B Am.Jur.2d *Trial* § 1462 (2009) ("Some states have adopted statutory criminal rules provisions allowing the substitution

of an alternate juror after deliberations have begun. In such states, a trial court is statutorily authorized to seat an alternate juror in the place of a juror who becomes ill or for other good or legal cause is incapacitated, and the trial court must exercise its discretion in making the substitution and is free to do so even after deliberations have begun.") (footnote omitted).

**26.** KRS 29A.280(1).

**27.** KRS 29A.280(2).

**28.** *Id.*

■ None of the three Kentucky cases previously discussed addresses whether an improper post-submission juror substitution could be a harmless error. Upon reflection, however, we conclude that this type of error should be subjected to a harmless error analysis.

Foremost in our reasoning is the inescapable fact that RCr 9.24 mandates that "no error or defect in any ruling . . . or in anything done or omitted by the court . . . is ground for granting a new trial or for setting aside a verdict . . . unless it appears to the court that the denial of such relief would be inconsistent with substantial justice." RCr 9.24 further provides that we "must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties." Virtually all errors, therefore, are subject to harmless error analysis.

In addition, a seeming majority of other courts have held that juror substitution of this sort does not violate the constitution.[29] Similarly and significantly, neither *Woods*, *Thurman*, nor *Holland* concluded that post-submission juror substitution was an issue of constitutional import. In fact, none of those three cases even mentions in passing any constitutional dimension to this issue.

■■ Even if we were to assume, for the sake of argument alone, that this type of juror substitution error was one of constitutional import, our conclusion that a harmless error standard would apply would be unchanged. Errors of constitutional import—the most fundamental and serious type of errors—are generally analyzed under a harmless error standard.[30] As the Court of Appeals of Michigan noted, "[t]he prevailing holding among the [federal] circuits is that reinstating a discharged alternate juror during deliberations, absent consent of the defendant, requires reversal of a conviction only when the defendant has been prejudiced by the procedure. We believe that this is the better, more reasonable rule."[31]

---

**29.** *Claudio v. Snyder*, 68 F.3d 1573, 1575 (3d Cir.1995) (collecting cases and stating, "[t]he Supreme Court has not specifically ruled on the constitutionality of substituting an alternate juror after jury deliberations have begun. Most of the federal courts that have addressed the issue, however, have held that when circumstances require, substitution of an alternate juror in place of a regular juror after deliberations have begun does not violate the Constitution, so long as the judge instructs the reconstituted jury to begin its deliberations anew and the defendant is not prejudiced by the substitution."); 50A C.J.S. *Juries* § 531 (2009) ("Under many state statutes and court rules, a deliberating juror may be replaced with an alternate juror at any time, even if the discharge occurs during deliberations, for good cause shown; such a procedure is not unconstitutional, and does not violate the Federal Constitution or a state constitution.") (footnotes omitted). *But see, e.g., State v. Bobo*, 814 S.W.2d 353, 356 (Tenn.1991) (holding that post-submission juror substitution, "coupled with the trial court's failure to instruct the jury to begin deliberations anew," violated right to trial by jury section of Tennessee Constitution).

**30.** *Neder v. United States*, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) ("We have recognized that most constitutional errors can be harmless. If the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitutional errors that may have occurred are subject to harmless-error analysis. Indeed, we have found an error to be structural, and thus subject to automatic reversal, only in a very limited class of cases.") (citations, quotation marks, and brackets omitted); *Talbott v. Commonwealth*, 968 S.W.2d 76, 83–84 (Ky. 1998) ("The fact that an error involves a constitutional right does not preclude harmless error analysis.").

**31.** *People v. Dry Land Marina, Inc.*, 175 Mich. App. 322, 437 N.W.2d 391, 394 (1989) (citations omitted). *See also* DAVID B. SWEET, ANNOTATION, PROPRIETY, UNDER STATE STATUTE OR COURT RULE, OF SUBSTITUTING STATE TRIAL JUROR WITH ALTERNATE AFTER CASE HAS BEEN SUBMITTED TO JURY, 88 A.L.R.4th 711 (1991).

■ Our decision to apply the harmless error standard to this issue should come as no great surprise since we refused to reverse an unpreserved juror substitution error in *Holland.*[32] After all, we would have had to reverse the conviction in *Holland* if juror substitution errors were structural errors, not subject to harmless error analysis. By contrast, non-constitutional errors will rarely—perhaps never—rise to the level of being a structural error.[33]

■ We reject Crossland's contention that this type of juror substitution error rises to the level of a structural error—errors which are, per se, reversible because they undermine the fundamental legitimacy of the judicial process.[34] Structural errors are rare. Examples of errors that have been held to be structural (and, thus, compel reversal) are such fundamental errors as a complete denial of counsel, a biased trial judge, or denial of a public trial.[35] Although a criminal defendant has a constitutional right to a trial by jury under both the federal and Kentucky Constitutions,[36] we join many federal courts in concluding that generally, "substitution of an alternate juror in place of a regular juror after deliberations have begun does not violate the Constitution...."[37]

Because we have already determined that this error is not of constitutional dimension, we conclude that it is both permissible and appropriate to analyze a postsubmission juror substitution error under the harmless error standard, provided the error is properly preserved. If the error is not properly preserved, it should be analyzed for palpable error under RCr 10.26.

4. *We Cannot Say From the Record Before Us that the Juror Substitution Error in this Case was Harmless.*

Having determined that we can use harmless error analysis to examine a properly preserved post-submission juror substitution error, we must now determine

**32.** 2005 WL 2045375.

**33.** *State v. Colon,* 118 Ohio St.3d 26, 885 N.E.2d 917, 922 (2008) ("If an error in the trial court is not a constitutional error, then the error is not structural error."); *Green v. United States,* 262 F.3d 715, 719 (8th Cir. 2001) (Bye, J., dissenting) ("Structural errors appear to be confined to the constitutional sphere because Congress has mandated the application of harmless error review by statute. *See* 28 U.S.C. § 2111 (requiring the circuit courts to disregard 'errors or defects which do not affect the substantial rights of the parties'). Presumably, only grave constitutional errors could surmount the statutory default rule that harmless error analysis applies.").

**34.** *Washington v. Recuenco,* 548 U.S. 212, 218–19, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) ("We have repeatedly recognized that the commission of a constitutional error at trial alone does not entitle a defendant to automatic reversal. Instead, most constitutional errors can be harmless. If the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitutional errors that may have occurred are subject to harmless-error analysis. Only in rare cases has this Court held that an error is structural, and thus requires automatic reversal. In such cases, the error necessarily renders a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.") (citations, footnote, and brackets omitted).

**35.** *Id.* at 218 n. 2, 126 S.Ct. 2546 (listing only six cases in which United States Supreme Court has found errors to be structural errors).

**36.** U.S. Const. Amend. VI; Ky. Const. § 7.

**37.** *Claudio,* 68 F.3d at 1575 (collecting cases). *See also* DAVID B. SWEET, ANNOTATION, PROPRIETY, UNDER STATE STATUTE OR COURT RULE, OF SUBSTITUTING STATE TRIAL JUROR WITH ALTERNATE AFTER CASE HAS BEEN SUBMITTED TO JURY, 88 A.L.R.4th 711 § 3(a) at 727–31 (1991).

whether the error in this particular case was preserved. We conclude it was.

▇▇▇ Crossland's attorney did not object to the juror substitution until after the trial court had been notified that the jury had reached a verdict. That objection was not, therefore, contemporaneous with the trial court's decision to substitute the discharged alternate. However, when Crossland's counsel made her objection, she explained that she had assumed the trial court would address the alternate juror on the record before dispatching the alternate to join deliberations; and she had intended to make her objection at that time. But that event did not occur on the record.

We will not penalize Crossland because the trial court did not afford his attorney a proper forum in which to lodge a contemporaneous objection. Crossland's attorney objected at the first moment the trial court came back on the record after deciding to recall the alternate juror. Importantly, Crossland's counsel objected before knowing the jury's verdict. So we will apply the harmless error standard for preserved errors to this case.

▇▇▇ A preserved, non-constitutional error is harmless "if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error ...," [38] But "[t]he inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." [39] So we must determine whether the erroneous post-submission juror substitution had a "substantial influence" on the outcome, or whether we at least have a "grave doubt" as to whether the error substantially influenced the jury's guilty verdicts against Crossland.[40]

▇▇▇ We have a grave doubt about whether the jury's verdict was substantially influenced by the improper jury substitution for two reasons. First, as previously discussed, the trial court failed to ensure that the alternate juror had not been subjected to outside influences that would have compromised his ability to function as an impartial juror.[41] So we are left to speculate as to what the alternate juror did or said, or what was done or said to him, during the period between the submission of the case to the jury and the alternate's reentry into the trial.[42] The importance of jurors not being subjected to outside influences is highlighted

**38.** *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

**39.** *Id.*

**40.** If we deemed the error to be of constitutional import, we would have to find the error to be harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.").

**41.** *See, e.g., Roberts*, 291 Ill.Dec. 674, 824 N.E.2d at 261 (criticizing trial court for not questioning recalled alternate juror to ensure alternate not biased due to outside influences); *People v. Patterson*, 832 P.2d 1083, 1085 (Colo.Ct.App.1992) (holding that there was no evidence to show that defendant was not prejudiced by post-submission juror substitution because, inter alia, alternate juror was not questioned about his activities while discharged until after verdict rendered).

**42.** Though the trial court admonished the juror not to discuss the case with anyone after he was permitted to leave the courtroom, the juror should still have been examined to ensure that he complied with the court's admonishment.

by the fact that, absent stipulation of the parties and approval of the court, RCr 9.66 requires deliberating jurors in felony cases to be sequestered. As the Court of Appeals of Maryland held, "[a]ssurance that the alternate juror remains qualified to serve is a prerequisite to a substitution and, unless waived by the defendant, must be established on the record." [43]

■ Second, the trial court failed to instruct the newly reconstituted jury to begin its deliberations afresh once the alternate juror joined them.[44] It is well settled that even in jurisdictions that permit post-submission substitutions, a trial court "must instruct the jury to begin deliberating anew"; and the trial court's failure to do so is reversible error.[45] As the Supreme Court of California has noted, a judge must instruct the jury to set aside any past deliberations and to begin deliberating anew when a post-submission juror substitution occurs in order to "insure that each of the 12 jurors reaching the verdict has fully participated in the deliberations, just as each had observed and heard all proceedings in the case." [46] In short, we

agree with the Colorado Court of Appeals that a direction from the trial court for the jurors to begin their deliberations afresh is "vital to the integrity of the deliberative process...." [47]

The jury had not been deliberating Crossland's fate long when the improper substitution occurred. A brief deliberation time before substitution would tend to support a conclusion that the erroneous substitution was a harmless error.[48] Had the trial court examined the substitute and instructed the jury to begin deliberations afresh, we may have found the error to be harmless because Crossland has not pointed to any specific prejudice stemming from the alternate's ultimate participation in deliberating the issues in the case.[49] But the trial court did not engage in either of those prophylactic measures. So we are left to speculate about whether the recalled juror was free of outside taint and whether the newly reconstituted jury began its deliberations afresh or whether the newly recalled juror simply acceded to a decision already arrived at by the other eleven jurors who had begun their deliberations.[50]

43. *Hayes,* 735 A.2d at 1121.

44. The trial judge did tell the eleven jurors to not deliberate until the alternate arrived, but did not tell them to begin their deliberations anew once the alternate arrived.

45. 50A C.J.S. *Juries* § 531 (2009). For example, the Supreme Court of Nevada has reversed an appellant's conviction for committing lewd acts with a seven-year old—even though the evidence against the appellant was overwhelming—solely because the trial court failed to follow the law by instructing the jury to begin their deliberations afresh once a post-submission juror substitution occurred. *Carroll v. State,* 111 Nev. 371, 892 P.2d 586, 587–88 (1995).

46. *People v. Collins,* 17 Cal.3d 687, 131 Cal. Rptr. 782, 552 P.2d 742, 746–47 (1976), *disapproved on another point in People v. Boyette,* 29 Cal.4th 381, 127 Cal.Rptr.2d 544, 58 P.3d

391, 443 n. 19 (2002). *Accord State v. Trent,* 79 N.J. 251, 398 A.2d 1271, 1272–74 (1979).

47. *Patterson,* 832 P.2d at 1085.

48. *See Id.* ("The length of time the jury has deliberated may, indeed, influence the issue of prejudice. And, it may be true that the longer the delay in inserting a substitute juror into the process the stronger the presumption of prejudice.") (citation omitted).

49. Since the juror, who had been discharged as an alternate, had been vetted through examination in the jury selection process, it would be difficult for Crossland to point to any inherent prejudice in having that same juror included among the twelve jurors who deliberated the verdict.

50. *Bobo,* 814 S.W.2d at 356 ("It may be that deliberations began anew once the alternate

As the Court of Appeals of Maryland concluded in a similar case, "on this record, we would be left to speculate whether the criteria we believe minimally necessary have been satisfied, and we are unwilling to engage in such speculation."[51] And the fact that the jury deliberated a very short time after being reconstituted is a factor that we may take into account in determining whether the erroneous jury substitution prejudiced Crossland.[52] Because we are "left in grave doubt" about whether the erroneous post-submission substitution had a "substantial influence" over the outcome of the proceedings, we must reverse Crossland's convictions.[53]

**B.** *Crossland Was Not Entitled to a Directed Verdict on the Arson Charge.*

Although this case is being reversed because of the improper jury substitution, we will briefly address Crossland's directed verdict claim since it is potentially dispositive of the arson charge.

Crossland contends that there was insufficient evidence to convict him of arson for setting his estranged wife's home afire. We disagree.

▮ A defendant is entitled to a directed verdict, drawing all reasonable inferences in favor of the Commonwealth, only "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt...."[54] Even "circumstantial evidence may form the basis for a conviction so long as the evidence is sufficient to convince a reasonable jury of guilt."[55]

▮ Here, the Commonwealth offered proof of a broken window in the burned home. According to the evidence, the window had been broken from the outside. Debris from the areas of origin of the fire, the master bedroom and bath, contained ignitable fluids, including gasoline. A detective noted a significant pour pattern where an accelerant had been poured onto the floor near the master bath. Crossland's estranged wife had told Crossland the day before the fire that she was going to file for divorce, and Crossland had told her that he was not going to let someone else "lay up in that house...." A camcorder and handgun, which were missing from the burned residence, were found in Crossland's residence. Finally, when interviewed shortly after the fire, Crossland smelled of gasoline; and he had what appeared to be burn marks on his hands.

From that evidence, a reasonable juror could certainly have concluded that Crossland had intentionally set afire his estranged wife's home. We reject Crossland's contention that his conviction was based upon only conjecture and an impermissible pyramid of inferences. To the contrary, we believe the Commonwealth adduced sufficient evidence for a reasonable juror to infer Crossland's guilt.

**C.** *Alleged Prosecutorial Misconduct Either Not Properly Preserved or Not Erroneous.*

Crossland complains of four alleged instances of prosecutorial misconduct.

was reseated. But without an explicit instruction to that effect from the trial judge, we cannot assume that the reconstituted jury panel started from the beginning.").

**51.** *Hayes*, 735 A.2d at 1121.

**52.** *Roberts*, 291 Ill.Dec. 674, 824 N.E.2d at 260 (holding that "length of deliberations both before and after substitution" is a factor to be considered in determining if juror substitution was prejudicial.).

**53.** *Kotteakos*, 328 U.S. at 765, 66 S.Ct. 1239.

**54.** *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991).

**55.** *Davis v. Commonwealth*, 147 S.W.3d 709, 729 (Ky.2004).

Three of those instances of alleged misconduct were not preserved for appellate review, and Crossland has not explicitly sought palpable error review in either his original brief or in his reply brief. Because this case does not present truly extraordinary circumstances where justice demands we undertake palpable error review on our own motion, we decline to address the three unpreserved claims of prosecutorial misconduct.[56] Since this case is being sent back to the trial court for other reasons, we will briefly discuss the lone remaining claim of prosecutorial misconduct to provide guidance upon remand.

The only arguably preserved claim of alleged prosecutorial misconduct is when the prosecutor referred in closing argument to General Norman Schwarzkopf's statement that "all that needs to happen for evil to prevail is for good people to do nothing," and then asked the jury to "do something."[57]

 A prosecutor is afforded "wide latitude" in closing argument;[58] and "when reviewing claims of prosecutorial misconduct, we must focus on the overall fairness of the trial and may reverse only if the prosecutorial misconduct was so improper, prejudicial, and egregious as to have undermined the overall fairness of the proceedings."[59]

We construe the prosecutor's request for the jury to "do something" to be only a request for the jury to find

Crossland guilty. Immediately following asking the jury to "do something," the prosecutor specifically asked the jury to find Crossland guilty. A prosecutor's request in closing argument for a jury to find a defendant guilty is proper and falls well within the wide latitude afforded during closing argument.

### IV. CONCLUSION.

The judgment of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion. All sitting.

All concur.

---

**56.** *Shepherd v. Commonwealth,* 251 S.W.3d 309, 316 (Ky.2008) ("Absent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review pursuant to RCr 10.26 unless such a request is made and briefed by the appellant.").

**57.** Preservation of this issue is highly questionable because Crossland's attorney did not make her objection until minutes after the

jury had retired to deliberate. Because the statement in question is not improper, however, we need not definitively decide whether this issue is properly preserved.

**58.** *Brewer v. Commonwealth,* 206 S.W.3d 343, 350 (Ky.2006).

**59.** *Id.* at 349.