# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.



# Supreme Court of Kentucky

## 2019-SC-0318-MR

LESLIE LEE PARSON                 APPELLANT

V.

ON APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE KIMBERLY N. BUNNELL, JUDGE
NO. 16-CR-001095

COMMONWEALTH OF KENTUCKY        APPELLEE

### MEMORANDUM OPINION OF THE COURT

### <u>AFFIRMING</u>

Leslie Lee Parson was convicted following a jury trial of murder and subsequently entered a guilty plea to being a convicted felon in possession of a handgun. He was sentenced to thirty years' imprisonment and now appeals as a matter of right. Ky. Const. § 110(2)(b). Prior to trial, Parson claimed immunity from prosecution pursuant to KRS[1] 503.085, which provides criminal and civil immunity for the use of permitted force. However, following a hearing on Parson's motion, the trial court found probable cause existed to conclude he used unlawful deadly physical force. At trial, Parson's motion for

---

[1] Kentucky Revised Statutes.

a directed verdict—based on his assertion the Commonwealth failed to prove he was not privileged to act in self-defense—was denied. He now alleges these two rulings were erroneous, as was the trial court's denial of his motion to exclude certain evidence, and contends he is entitled to reversal. For the reasons which follow, we affirm.

## A. FACTUAL AND PROCEDURAL SUMMARY

On May 28, 2016, Parson and three friends decided to go to Saddle Ridge Bar near the University of Kentucky campus. That same evening, Jacob Skyler Ray, his girlfriend, and two other friends also went to Saddle Ridge Bar to meet several associates. At some point during the evening, Parson and one of Ray's friends got into an altercation inside the bar. Racial tensions grew and verbal jabs were thrown. At the end of the night, around 2:30 a.m., following another verbal altercation, Parson and his companions left the bar. On the way out, Parson bumped into another patron who followed him outside demanding an apology for the "disrespect." Parson apologized but the other man struck him anyway. A brawl then broke out in the parking lot.

Hearing of the fight, Ray grabbed a beer bottle and headed to the parking lot. In a frantic scene caught on at least two cell phone videos, Ray can be seen entering the fracas and striking someone over the head with the bottle. Almost immediately, a single gunshot rang out, and Ray went down. He had been shot in the back of the head and would succumb to complications stemming from that injury some four months later. Parson and his friends

2

quickly vacated the lot. During their drive, Parson told his friends he had fired the shot.

Following interviews at the scene, police were able to identify the license plate number of the vehicle Parson had been in and quickly traced it to a residence in Frankfort, Kentucky. Detectives went to the residence and made contact with the owner of the vehicle, Ashley Whitis, who informed them she had allowed Parson, her boyfriend, to use the car the previous evening. Parson was at the apartment and told police he had been home all night. After being confronted with a photo of himself standing outside Saddle Ridge Bar, Parson admitted he had been there but had not been allowed inside because of his attire. He stated he had gone to the bar alone and denied being present at the time of the shooting. Parson agreed to undergo a complete interview at the police station and left the apartment. He never voluntarily appeared for an interview prior to his arrest.

Following additional investigation, an arrest warrant was issued for Parson charging him with assault. The warrant was served on June 8, 2016. After his arrest, Parson provided a statement in which he claimed to be the victim. He stated there had been a verbal altercation inside the bar and, after being asked to leave, he complied and walked to the parking lot. He claimed a group of people followed him, hurling racial epithets and demanding an apology. After offering the requested apology, he reported being struck and knocked to the ground. When he got up, he stated he shot one round from the pistol he had retrieved from his vehicle. He claimed to have shot behind him

3

without looking as he ran from the fight, with no intent to strike anyone, and without knowing his round had found its mark.

When Ray subsequently died, a superseding indictment was rendered by the Fayette County Grand Jury, charging Parson with murder and possession of a handgun by a convicted felon. On March 3, 2017, Parson moved to dismiss the murder charge on grounds he was immune from prosecution pursuant to KRS 503.085 because he was acting in justifiable self-defense when he discharged his weapon. The statute provides immunity to persons who use force in self-defense or defense of others, unless there is probable cause to believe the use of force was unlawful.

The trial court conducted a hearing on Parson's motion on March 21, 2017. Parson argued the facts and circumstances of the case did not establish probable cause to show he was not fully justified in defending himself, nor that his use of force was unlawful. The trial court denied the motion, concluding the totality of the circumstances revealed conflicting factual evidence sufficient to find the Commonwealth had satisfied its burden of showing probable cause Parson's use of force was unlawful and denied the motion to dismiss.

A three-day trial on the murder charge commenced on March 25, 2019.[2] Surveillance videos from inside the bar, along with two cellphone videos of the parking lot altercation were played for the jury. In addition, numerous

---

[2] The charge of possession of a handgun by a convicted felon was severed for trial purposes.

witnesses testified regarding their recollections of the evening leading up to and including the fateful moment Ray was shot.

Keyon Patterson, a friend who had accompanied Parson to the bar, opined he and two other friends were "winning" the parking lot fight prior to the shot being fired because they had knocked one of the main instigators to the ground and were kicking him. Immediately prior to the shot, he recalled one of the two friends being struck by a bottle.

Kylie Price, Ray's fiancée, testified Ray entered the melee to protect his friend who was on the ground and being kicked in the head. She said Ray struck one of the kicking men in the head with a bottle he had grabbed upon exiting the bar. Immediately thereafter, she recalled a tall and slender black male grabbed Ray and shot him in the back of the head.

Whitis confirmed Parson used her vehicle on the night of the shooting, identified the pistol used in Ray's shooting as belonging to Parson, and was asked to read several text messages exchanged between herself and Parson on the night of the shooting. Parson objected to the latter, claiming the text messages were irrelevant and more prejudicial than probative, but the trial court overruled the objection and permitted the Commonwealth to proceed in eliciting the testimony.[3]

---

[3] Parson's pre-trial motion *in limine* to exclude the text messages on the same grounds had likewise been denied.

The Commonwealth also introduced testimony of the physician who performed Ray's autopsy, along with her report, indicating the bullet had entered the rear of his skull and had travelled at a downward slope, slightly left to right. Additionally, Detective Bill Brislin detailed the results of his investigation, which contradicted Parson's account of running away from the fight when he fired his weapon and revealed several instances of Parson's untruthfulness in statements provided to police.

At the close of the Commonwealth's case, Parson moved for a directed verdict. He asserted the Commonwealth had failed to meet its burden of proving murder and "all the evidence, even some of the Commonwealth's witnesses," showed he was acting in self-defense. In response, the Commonwealth argued Parson shot Ray, ultimately causing his death, and he was not privileged to do so. The Commonwealth noted the only indication of self-defense had arisen from Parson's own self-serving statements to police following his arrest. The trial court, in viewing the evidence in the light most favorable to the Commonwealth, concluded a factual disagreement sufficient to present the case to the jury existed and the Commonwealth had met its burden of going forward. Parson's renewed motion for directed verdict at the close of all of the evidence was also denied.

The jury found Parson guilty of murder and recommended a sentence of twenty-five years' imprisonment. Following the verdict, Parson entered a guilty plea to the handgun possession charge and received a recommended sentence

6

of five years. The sentences were ordered to run consecutively for a total of thirty years' imprisonment. This appeal followed.

## B. LEGAL ANALYSIS

Parson raises three allegations of error in seeking reversal of his murder conviction. He asserts the trial court erred in denying his pre-trial motion for dismissal on grounds of self-defense immunity under KRS 503.085, denying his motions for a directed verdict, and in permitting Whitis to read the challenged text messages to his substantial prejudice. We shall address his contentions in reverse order.

First, Parson argues the Commonwealth introduced the challenged text messages—which demonstrated only that he had been untruthful to his perturbed girlfriend—for the sole purpose of casting him as a habitual liar.[4] He contends the text messages sent between himself and Whitis on the night of the murder were irrelevant because they did not tend to make the existence of any consequential fact more or less probable in relation to the murder charge and were otherwise more prejudicial than probative. Further, Parson argues for the first time on appeal that the Commonwealth's introduction of the text messages was nothing more than a thinly-veiled attempt to present evidence of other bad acts to the jury, constituting a violation of KRE[5] 404b. Based on the

---

[4] Although the Commonwealth's stated purpose for introducing the text messages was to show Parson's state of mind and his propensity for untruthfulness, no such argument was put to the jury and Parson does not point us to where the Commonwealth again mentioned the challenged messages.

[5] Kentucky Rules of Evidence.

foregoing, he asserts the messages should have been excluded. In response, the Commonwealth concedes the text messages were admitted in error, but argues the error was harmless due to the substantial evidence supportive of the jury's verdict. We agree with the Commonwealth.

Evidence demonstrated Whitis sent the initial text message to Parson at 11:39 p.m. on May 28, 2016. Her text chastised him for leaving her alone and bored, expressed her anger for his not arriving at home when promised, and demanded respect. Approximately one hour later, Parson texted Whitis indicating he was on his way home, Whitis responded by asking from where he was coming, and he replied he was at his sister's house. Other than confirming her belief Parson had been at his sister's house, the Commonwealth posed no further questions to Whitis regarding the text messages.

"[N]o error or defect in any ruling . . . is ground for granting a new trial or for setting aside a verdict . . . unless it appears to the court that the denial of such relief would be inconsistent with substantial justice." *Anderson v. Commonwealth*, 281 S.W.3d 761, 766 (Ky. 2009) (quoting RCr[6] 9.24). "A non-constitutional evidentiary error may be deemed harmless . . . if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." *Winstead v. Commonwealth*, 283 S.W.3d 678, 688-89 (Ky. 2009) (citing *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). However, "[t]he inquiry cannot be merely whether there

---

[6] Kentucky Rules of Criminal Procedure.

was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." *Crossland v. Commonwealth*, 291 S.W.3d 223, 233 (Ky. 2009) (quoting *Kotteakos*, 328 U.S. at 765, 66 S.Ct. at 1248).

Here, though the jury was read brief text messages in which Parson was untruthful with his upset girlfriend regarding his whereabouts, no further testimony or argument concerning the incident was forthcoming. Whitis's fleeting recitation of the text messages lasted less than one minute and was practically inconsequential compared to the magnitude of evidence offered over the three days of trial. Even were the admission of the challenged text messages error, the amount of evidence presented against Parson—including witness testimony, cellphone and surveillance videos, and his own plainly self-serving and demonstrably false statements to investigators—fairly assures us the jury was not substantially swayed, nor the outcome affected, by their admission. In short, we cannot say that but for this testimony the jury would have acquitted Parson of Ray's murder. *See Hilton v. Commonwealth*, 539 S.W.3d 1, 19 (Ky. 2018). Thus, any error was harmless.

Second, asserting the Commonwealth failed to meet its burden of disproving his self-protection defense, Parson argues the trial court erred in denying his motions for a directed verdict. We disagree.

In ruling on a motion for directed verdict, the trial court takes as true all evidence favoring the Commonwealth and draws all reasonable inferences from

such evidence. It is not at liberty to determine the weight or credibility to be given to the evidence, that function being reserved for the jury. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). "If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given." *Id.* On review, we are tasked with determining whether, "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Lamb v. Commonwealth*, 510 S.W.3d 316, 325 (Ky. 2017). Convictions must be based on more than a mere "scintilla of evidence," *Benham*, 816 S.W.2d at 187-88, because "there must be evidence of substance." *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983).

The trial court utilized the appropriate standard in ruling on Parson's motions for directed verdict and analyzed the evidence in the light most favorable to the Commonwealth. In so doing, the trial court noted sufficient factual issues existed and agreed with the Commonwealth the jury must determine the credibility of the witnesses and the mental state involved when the shooting occurred. Parson's argument relies solely on his perception of the evidence and he faults the trial court for not ascribing to his view he was acting in self-defense when he shot Ray and no reasonable juror could conclude otherwise.

As correctly noted by the Commonwealth, "[r]arely is a defendant relying upon self-defense entitled to a directed verdict." *West v. Commonwealth*, 780 S.W.2d 600, 601 (Ky. 1989). "If the testimony relied on to establish self-

defense is contradicted in any way or if there is evidence of any fact or circumstance from which a jury could reasonably conclude that some element of self-defense was lacking, a directed verdict should not be given." *Wheeler v. Commonwealth*, 472 S.W.2d 254, 256 (Ky. 1971).

Here, Parson fails to appreciate the sole evidence regarding his position arises from his own self-serving statement to police made nine days after the shooting and following his arrest. Contrary to his contention, no other testimony or evidence tended to establish he acted in his own defense when he shot Ray in the back of the head. Taken in a light most favorable to the Commonwealth, substantial evidence was presented to support Parson's conviction and it was not clearly unreasonable for a jury to find guilt. Thus, the trial court properly denied the motions for directed verdict.

Parson's final argument on appeal is that the trial court erred in denying his pretrial motion for immunity. As previously stated, Parson moved the court to grant him criminal immunity based on the provisions of KRS 503.085. The court denied his motion. Parson argues this was error and asks for reversal of his conviction.

> When the defendant "has been tried and convicted by a properly instructed jury in a trial with no reversible error," this Court has held that questions raising the propriety of the trial court's immunity determination become "purely academic." Under such circumstances, the defendant's "self-defense claim has been thoroughly examined by both the trial judge under the directed-verdict standard and the jury under the court's instructions and his entitlement to self-defense has been rejected." In such cases, when a jury has already convicted the defendant—and, thus, found that his use of physical force in fact was unlawful beyond a reasonable doubt—and that conviction has not been shown to be flawed, the appellate court will not revisit whether there was

11

probable cause to believe that a defendant's use of force was unlawful to allow prosecution under KRS 503.085.

*Ragland v. Commonwealth*, 476 S.W.3d 236, 246 (Ky. 2015) (citations and footnote omitted). Based on this precedent, and having found no reversible error in Parson's conviction, we are without authority to review this issue.

## C. CONCLUSION

For the foregoing reasons, the judgment and sentence of the Fayette Circuit Court is AFFIRMED.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Roy Alyette Durham, II
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

Stephanie Lynne McKeehan
Assistant Attorney General